(Nos. 61512, 61540 cons.—

PATRICIA LECK *et al.*, Appellants and Appellees, v. RONALD MICHAELSON, Executive Director of the State Board of Elections, *et al.* (Ronald Michaelson, Appellee and Appellant).

*Opinion filed March 19, 1986.*

Gorman & Gorman, of Chicago (Gregory X. Gorman and H. Candace Gorman, of counsel), for appellant and appellee Patricia Leck *et al.*

David A. Epstein, Gary A. Weintraub, James Scanlon and James Tenuto, Special Assistant Attorneys General, all of Chicago, for appellee and appellant Ronald Michaelson.

JUSTICE SIMON delivered the opinion of the court:

The plaintiffs in this case are six registered voters of the village of Lansing, one of whom was also a candidate for the office of village trustee in April 1983. The named defendants were Ronald Michaelson, executive director of the State Board of Elections, Stanley Kusper, the chairman of the Cook County board of elections, and Louis La Mourie, the mayor of Lansing. The plaintiffs brought suit in the circuit court of Cook County to force these defendants to conduct a runoff election for two village trustee positions pursuant to a referendum and a subsequently enacted village ordinance requiring that a runoff be held for any village office for which no candidate receives 50% of the votes cast. The plaintiffs also asked for their attorney fees. Defendant Michaelson challenged the constitutionality of the Lansing election system and of the referendum and ordinance by which the system was adopted.

The circuit court upheld the Lansing 50% rule and

the runoff election system, even though the runoff schedule conflicted with State election law (Ill. Rev. Stat. 1983, ch. 46, pars. 1A—1, 2A—1.2). The court also held that under the 50% rule, two village trustees had failed to garner the necessary vote, and ordered a runoff for both positions. On appeal, the appellate court upheld the 50% rule but invalidated those provisions of the ordinance that conflict with the schedules and procedures of the State election law. (129 Ill. App. 3d 593.) The appellate court held that under the 50% rule, one village trustee had failed to receive the requisite vote, and directed that a runoff be held for that office. The appellate court also affirmed the circuit court's denial of the plaintiffs' request for attorney fees. Under our Rule 315 (94 Ill. 2d R. 315), we allowed the petition for leave to appeal of defendant Michaelson in cause No. 61540 and consolidated that cause with the plaintiffs' cross-petition for leave to appeal from the denial of attorney fees in cause No. 61512.

In April 1979, the village of Lansing held a referendum on the following proposition:

"Shall a run-off election be held for any candidates for public office in the Village of Lansing who do not receive fifty percent (50%) of the votes cast for that office."

The proposition carried, and in July 1979, the village board passed an ordinance that it regarded as an implementation of the proposition. The ordinance, which took effect in September 1979, provides with respect to the office of village trustee:

"Section 4: In the event that all, or some of the candidates for the office of Village Trustee do not receive fifty (50) percent of the votes cast at the election for that office, then a run-off election will be conducted *** as follows:

(a) If none of the candidates for Village Trustee receive fifty (50) percent of the votes cast at the elec-

tion for that office, then a run-off election will be conducted among the candidates who receive the largest number of votes cast at the regular municipal election, not to exceed two (2) candidates for each office to be filled. The candidates receiving the highest number of votes in that election for the number of offices available shall be elected to the office of Trustee.

(b) if one or more of the candidates for Village Trustee receives fifty (50) percent of the votes cast at the election for that office, any such candidate shall be elected to the office of Trustee. If there are any candidates not elected, and if any offices for Trustee remain unfilled, then a run-off election will be conducted among the remaining candidates who receive the largest number of votes cast at the regular municipal election, not to exceed two (2) candidates for each office to be filled. The candidates receiving the highest number of votes in that election for the number of offices available shall be elected to the office of Trustee."

The 1970 Illinois Constitution empowers home rule units to adopt or alter a form of government by referendum. Article VII provides in pertinent part:

"Sec. 6. Powers of Home Rule Units

(f) *** A home rule municipality shall have the power to provide for its officers, their manner of selection and terms of office *only as approved by referendum* or as otherwise authorized by law." (Emphasis added.) Ill. Const. 1970, art. VII, sec. 6(f).

The referendum powers vested in the voters are limitations on the home rule powers that are given to local governing bodies under article VII, section 6(a), which expressly excludes from the powers of local governing bodies the matters reserved for voter approval:

"*Except as limited by this Section,* a home rule unit may exercise any power and perform any function pertaining to its government and affairs ***." (Emphasis added.) Ill.

Const. 1970, art. VII, sec. 6(a).

Thus, the constitutional mandate requires that changes in the manner of selecting officers of a home rule municipality or their terms are reserved to the voters by article VII, section 6(f), and can be effected only by referendum unless otherwise authorized by legislative enactment. It is clear that providing runoff elections for candidates for public office who do not receive the requisite number of votes is a change in the manner of selecting municipal officers, and in the absence of legislative authority for such a change, it can be accomplished only by referendum. It is undisputed in the present case that the voters of Lansing had the power under section 6(f) to effect by referendum a rule requiring that their local officials be elected by 50% of the votes cast, and that such a referendum was required because there was no legislative authority for the change.

Defendant Michaelson argues that the requirement of referendum approval extends beyond the bare concept of a proposed change, such as the Lansing 50% rule, to the method of implementing that rule as well. Michaelson contends that the "approval" requirement bars any changes permitted ˉunder section 6(f) that were not clearly contemplated by the terms of a referendum proposition. Because the Lansing proposition was not self-executing, and the ordinance that was passed to "implement" the proposition contained changes in the election system that were not clearly contemplated by the terms of the proposition, the defendants submit that the referendum and ordinance are constitutionally defective.

Among the changes in Lansing's election system instituted by the ordinance that was passed by the village board to "implement" the referendum was the addition of a third election after the party primary in February and the general election in April. While the proposition

clearly contemplated a runoff election in the event that no candidate for a village office received a majority of the votes cast, the terms of the proposition did not indicate how or when that runoff would be conducted.

Adding a later runoff election necessarily shortened the terms of office of those trustees who are not elected until the runoff, and lengthened the terms of those lame-duck officials whose terms are extended until their successors are determined by the runoff. Altering the terms of office of village officials was not a change contemplated by the language of the referendum proposition, but is one of the items that is specifically subject to voter approval under section 6(f).

Moreover, the ordinance limits the number of runoff elections to be held to one per office to be filled, and restricts the number of candidates in each runoff to the two receiving the highest number of votes for that office at the regular municipal election. (Ordinance sec. 4.) These limitations appear to conflict with the terms of the referendum proposition, which requires that "a run-off election be held for *any candidates* *** who do not receive fifty percent (50%) of the votes cast for that office." (Emphasis added.) If a runoff slated all of the candidates for a given office who did not receive 50% of the vote, however, an endless series of runoffs could result whenever more than two candidates ran for office.

The ordinance also declares that the candidate receiving "the highest number of votes" in a runoff shall be elected to the office of village trustee. (Ordinance sec. 4.) The ordinance thus permits candidates to win by a simple plurality where, for example, two trustee positions are at stake and three or more candidates are slated. This result is clearly contrary to the terms of the referendum proposition, which requires every official to win by a majority.

Finally, how to determine what constitutes "50% of

the votes cast" for office of village trustee where nine or more candidates may run for three at-large seats is clear in neither the referendum proposition nor the ordinance. The ambiguity is demonstrated by the different methods adopted by the circuit court and the appellate court for determining what constitutes "50% of the votes cast for that office" when three at-large trustee seats are at stake. The circuit court ruled that the 50% figure should be arrived at by dividing the number of ballot applications filed by two. The appellate court noted that each voter was entitled to three noncumulative votes, but that some voters did not cast all of the votes to which they were entitled. The appellate court therefore arrived at the 50% figure by adding all the votes actually cast, dividing by the three seats at stake, and then dividing by two. Since there is no way to distinguish between votes for one trustee seat and another, some averaging method is clearly necessary in order to arrive at a 50% figure; however, there is no way to determine which of the methods devised by the two courts more nearly represents the intent of the referendum proposition.

Thus, the 1979 Lansing referendum was vague and ambiguous. Just what was approved by the voters is uncertain. Neither the 50% rule nor the mechanics of the runoff scheme were clear in the referendum. The referendum either proposed a series of runoffs or what it proposed is uncertain. What is clear is that the bare concept contained in the referendum proposition had to be interpreted, supplemented and modified in order to be implemented. Because the referendum could not stand on its own terms, however, the voters of Lansing cannot be said to have approved a coherent scheme for altering the election of their officials, which is what section 6(f) requires. Indeed, some of the specific terms contained in the ordinance that purportedly "implements" the referendum are contrary to the plain terms of the proposi-

tion. We therefore hold that the 1979 Lansing proposition was fatally defective under article VII, section 6(f), of the 1970 Illinois Constitution because of its vagueness and ambiguity.

The Lansing referendum illustrates the mischief that may result from a proposition that initiates a change in the election process without adequately working out and articulating the details of the new scheme. Because we hold the Lansing referendum invalid, we need not reach the question of the validity of those provisions of the ordinance that conflict with State election law.

There remains only the question of the plaintiffs' cross-petition for their attorney fees. Their request was made pursuant to the Civil Rights Attorneys Fees Awards Act of 1976 (42 U.S.C. sec. 1988 (1982)). However, that statute applies only to actions or proceedings brought under certain Federal statutes that are not at issue in this case. Moreover, the plaintiffs have not prevailed. Hence, there is no basis for granting their request for attorney fees.

The judgments of the appellate and circuit courts are affirmed insofar as they denied attorney fees. The judgments are otherwise reversed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part.*