2016 IL App (1st) 153374

THIRD DIVISION
January 11, 2016

No. 1-15-3374

| | | |
|---|---|---|
| TIFFANY HENYARD, STANLEY H. BROWN, and ROBERT G. HUNT, JR., | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 15 CH 14094 |
| VILLAGE OF DOLTON, ILLINOIS, an Illinois Municipality; RILEY H. ROGERS, in His Official Capacity as Mayor; and MARY KAY DUGGAN, in Her Official Capacity as Village Clerk, | ) ) ) ) ) ) | Honorable Mary L. Mikva, Judge Presiding. |
| Defendants-Appellees. | ) ) | |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     On June 1, 2015, the Village of Dolton, by a majority vote of its board of trustees, passed

an ordinance providing for the recall of elected officials.  Plaintiffs-appellants, Tiffany Henyard,

Stanley H. Brown and Robert G. Hunt, Jr., are duly elected village trustees who voted against the

ordinance.  Defendant-appellee Riley H. Rogers, the village mayor, approved the ordinance,

which was attested to by defendant-appellee Mary Kay Duggan, the village clerk.  On September

24, 2015, plaintiffs commenced this action seeking a declaration that the ordinance was

unconstitutional on a number of grounds, including that, as a home rule unit, the village was

required to submit the issue to a voter referendum prior to enactment of the ordinance.  The trial

court disagreed and granted defendants' motion for judgment on the pleadings and denied

plaintiffs' motion for summary judgment. Because we believe our supreme court's decision in *Leck v. Michaelson,* 111 Ill. 2d 523 (1986), compels a different result, we reverse.

¶ 2                                                    BACKGROUND

¶ 3         In April 2013, voters elected Heynard, Brown and Hunt to the office of Trustee of the Village for a four-year term. Plaintiffs' terms expire in May 2017. Rogers serves as Dolton's Mayor and Duggan serves as Dolton's Clerk. Rogers' and Duggan's elected four-year terms also expire in 2017.

¶ 4         Dolton is a home rule unit of government. Article VII of the 1970 Illinois Constitution addresses the powers of both home rule and non-home rule units of local government. Article VII, section 6 pertains to the powers of home rule units, while section 7 applies to municipalities that are not home rule units. Ill. Const. 1970, art. VII, §§ 6-7.

¶ 5         With respect to home rule units, section 6(a) of article VII provides: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs *** ." Ill. Const. 1970, art. VII, § 6(a). Among the limitations on home rule powers contained in section 6 is subsection (f), which provides: "A home rule municipality shall have the power to provide for its officers, their manner of selection and terms of office only as approved by referendum or as otherwise authorized by law." *Id.* § 6(f).

¶ 6         In contrast to the broad powers vested in home rule units under section 6, section 7, pertaining to non-home rule units, makes clear that the powers of such local governments are limited unless otherwise authorized by law or specifically granted by the constitution. One of the constitutional grants of power to non-home rule units is to "provide by referendum for their officers, manner of selection and terms of office." Ill. Const. 1970, art. VII, § 7(3). Thus, although both types of government are vested with the power to provide for their "officers,

manner of selection and terms of office" (*id.*) by way of referendum, the constitution expresses that power in section 6(f) as a *limitation* on the broad powers of home rule units (*Leck*, 111 Ill. 2d at 527), while section 7(3) constitutes an *expansion* of the otherwise limited powers of non-home rule units (*Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 255 (2003); *Pesticide Public Policy Foundation v. Village of Wauconda*, 117 Ill. 2d 107, 111-12 (1987)).

¶ 7    On June 1, 2015, by a vote of 4 to 3, the Village adopted ordinance 15-022, which adds a new chapter to the Village's code and provides for the recall of elected officials. As noted, plaintiffs voted against the ordinance. It is undisputed that the Village passed the ordinance without approval by referendum.

¶ 8    The ordinance includes the following sections:

"Section 1-14-4 – Recall of Elected Officials.

A. Elected Officials hold office subject to the right of recall vested by this Chapter in the electors of the Village of Dolton. Subject to the terms and provisions of this Chapter, any Elected Official may be recalled and removed from office by a majority vote of the electorate at a recall referendum initiated as provided in this Chapter.

B. No Elected Official shall be subject to recall at an election to be held during the Elected Official's first year in office or at an election held during that Official's last eight months in office.

Section 1-14-5 – Recall Procedures.

A proposition to recall an Elected Official shall be certified by the Village Clerk to the proper election authority, who shall then submit the proposition at an election in accordance with the general election law, if a petition requesting such

action is signed by electors of the Village numbering not less than 25% of the total vote cast at the last election for Mayor of the Village, and the petition is filed with the Village Clerk.

The proposition shall be in substantially the following form:

Should (Name of Elected Official) be recalled and removed from the Office of (Title of Office) of the Village of Dolton?

If a majority of votes cast shall be in favor of the recall of the named Elected Official, the office shall be declared vacant and the office shall then be filled in the manner provided by law for the filling of a vacancy." Village of Dolton Ordinance No. 15-022, §§ 1-14-4, 1-14-5 (approved June 1, 2015).

The ordinance became effective upon its passage and applied retroactively to individuals elected to village office in April 2013 and thereafter. The ordinance provides for the recall of Dolton's elected officials, including the mayor, clerk and trustees. "The manner provided by law for the filling of a vacancy" relating to occurrences such as an elected official's resignation, death, disability, removal from office and conviction of a disqualifying crime is for the mayor to appoint an individual with approval of the trustees. 65 ILCS 5/3.1-10-51(a)(1), (b) (West 2014).

¶ 9 Plaintiffs' verified complaint for declaratory judgment requested that the ordinance be declared unconstitutional and sought injunctive relief to prohibit defendants from enforcing the ordinance and accepting recall petitions. After they answered the complaint, defendants filed a motion for judgment on the pleadings asserting the ordinance was a valid exercise of the village's home rule legislative power. Plaintiffs sought summary judgment on the issue of whether the ordinance, enacted without prior referendum approval, exceeded the village's home rule authority. The trial court ruled in favor of defendants and against plaintiffs largely in reliance on

this court's decision in *Williamson v. Doyle*, 103 Ill. App. 3d 770 (1981). *Williamson* characterized "recall" as the "de-selection" of an elected official and concluded that the process of recall—or de-selection—was not within the grant of powers to a non-home rule unit of government as set forth in article VII, section 7. *Id*. at 772. Although *Williamson* did not present the issue for decision, this court found that a home rule unit could enact a valid recall ordinance. *Id*. at 773. The trial court determined it was bound by *Williamson*, a decision that was not expressly overruled by our supreme court's later decision in *Leck*. Plaintiffs timely appealed.

¶ 10                                                    ANALYSIS

¶ 11          Plaintiffs claim that the ordinance implements a new procedure to remove elected officials from office before the end of their terms and thus alters the terms of office and the manner of selection of those officials. Because the Village passed the ordinance without a referendum, plaintiffs assert the ordinance is unconstitutional and the trial court erred in granting defendants' motion for judgment on the pleadings and denying their motion for summary judgment.

¶ 12          We review *de novo* the trial court's ruling entering judgment on the pleadings *(People v. Vincent*, 226 Ill. 2d 1, 18 (2007)) and denying a motion for summary judgment (*Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008)).

¶ 13          We agree with the trial court that disposition of this appeal turns on an analysis of *Williamson* and *Leck*. Therefore, we turn to an examination of those decisions.

¶ 14          In *Williamson*, the city of Northlake, a non-home rule unit, proposed a referendum asking voters to decide whether the city should adopt an ordinance providing a procedure for recall of its elected officials. 103 Ill. App. 3d at 771. As noted, under section 7, article VII of the constitution pertaining to non-home rule units, municipalities have only the powers granted to

them by law and, *inter alia*, the power "(3) *** to provide by referendum for their officers, manner of selection and terms of office." Ill. Const. 1970, art. VII, § 7. The *Williamson* court defined the issue as whether the phrase, "to provide by referendum for their officers, manner of selection and terms of office" could be read to include the power "to provide by referendum for a means of removing officers." (Internal quotation marks omitted.) 103 Ill. App. 3d at 771.

¶ 15      Answering the question in the negative, *Williamson* reasoned that the drafters of the 1970 Constitution were familiar with the concept of recall and had they "intended to include the recall power in section 7(3), they would have done so explicitly." *Id.* at 772. The court contrasted a recall referendum with referenda (i) to change the office of city clerk from an appointed to an elected position (*Clarke v. Village of Arlington Heights,* 57 Ill. 2d 50 (1974) (a case involving a home rule unit)) and (ii) to hold nonpartisan elections in lieu of partisan contests (*Boytor v. City of Aurora,* 81 Ill. 2d 308 (1980) (also involving a home rule unit)), and found that while the latter changes clearly fell within the "manner of selection" language of section 7(3), recall did not: "A recall procedure, however, is a manner of 'de-selection' and does not comfortably fit within any of [the] three categories of section 7(3) *** ." *Williamson*, 103 Ill. App. 3d at 772.

¶ 16      The court further addressed petitioner's argument that the absence of any reference to recall in the constitution did not necessarily indicate that recall provisions were prohibited. Agreeing with the point, but finding it "inapposite," the court observed that notwithstanding the lack of any reference to recall in the 1870 constitution, a recall provision was enacted as part of the Illinois Municipal Code. *Id.* That provision was held unconstitutional by our supreme court in *In re Petition for Removal of Struck,* 41 Ill. 2d 574, 579 (1969), not because it was prohibited by the constitution, but on the narrow ground that it constituted prohibited special legislation because it applied only to one form of local government and not others. In the course of its

ruling, the supreme court in *Struck* observed that if recall legislation was appropriate, it should apply to all forms of government. *Id.*

¶ 17    From this observation in *Struck*, the *Williamson* court inferred that "an even-handed recall statute would have been constitutional under [both] the 1870 [and 1970] Constitution[s]." 103 Ill. App. 3d at 773. The court then distinguished the means by which home rule and non-home rule units could effect the process of recall:

> "The 1970 Constitution gives home rule units broad legislative powers and states that those powers are to be construed liberally. [Citation.] Consequently, a home rule unit could enact a valid recall ordinance. Non-home rule units such as the city of Northlake do not have such power." *Id.*

Because the issue in *Williamson* did not concern the scope of a home rule unit's power to enact a recall ordinance, the foregoing observation was not necessary to the result and, in that sense, can be characterized as *dicta.* But *Williamson did* interpret the meaning of the phrase, "to provide for its officers, their manner of selection and terms of office" that is common to both section 6(f) and section 7(3) and determined that the phrase did not include recall. (Internal quotation marks omitted.) *Id*. at 772-73. Thus, we must decide whether to adhere to that interpretation.

¶ 18    Several years after *Williamson* was decided, our supreme court addressed the nature of the section 6(f) limitation on a home rule unit's legislative authority in *Leck*. *Leck* involved an ordinance enacted by the village of Lansing, a home rule unit, following a referendum requiring runoff elections for any office for which no candidate received 50% of the votes cast. 111 Ill. 2d at 526. Ultimately, the court concluded that the language of the referendum was vague and ambiguous so that it could not be determined what the voters had approved and, therefore, the

implementing ordinance, which addressed many details of the runoff procedure that had not been included in the referendum, was defective as well. *Id*. at 530-31.

¶ 19    In the course of its opinion, the court noted that voter referendum powers serve as limitations on powers given to home rule units under article VII, section 6(a). *Id*. at 527. As pertinent here, *Leck* held that "changes in the manner of selecting officers of a home rule municipality or their terms are reserved to the voters by article VII, section 6(f), and can be effected *only* by referendum unless otherwise authorized by legislative enactment." (Emphasis added.) *Id*. at 528. The court explained that a runoff election "necessarily shortened the terms of office of those trustees who are not elected until the runoff, and lengthened the terms of those lameduck officials whose terms are extended until their successors are determined by the runoff. Altering the terms of office of village officials was not a change contemplated by the language of the referendum proposition, but is one of the items that is specifically subject to voter approval under section 6(f)." *Id*. at 529. Thus, because the ordinance included provisions applicable to runoff elections, some of which affected the terms of office of village officials, and because those provisions had not been presented to and approved by voters through the referendum, the ordinance ran afoul of the power reserved to the electorate under section 6(f). *Id*. at 529-30.

¶ 20    We do not believe *Williamson*'s characterization of a recall procedure as "de-selection" as opposed to "selection" of elected officials as a basis to deprive voters in home rule units of the referendum power vested in them under section 6(f) can withstand our supreme court's analysis in *Leck. Leck* examined the practical effect of the ordinance on the terms of Lansing's elected officials and determined that although Lansing's voters had approved the broad concept of runoff elections, the particulars of the ordinance directly affected the terms of those officers subject to runoff contests in ways the voters had not been asked to approve. *Leck*, Ill. 2d at 530.

Therefore, under *Leck*, we must look to see if Dolton's ordinance alters plaintiffs' terms of office or the manner of selecting the officer to serve in that office; if the ordinance affects either or both, then its enactment without a prior referendum cannot stand.

¶ 21    First, we find that the ordinance directly impacts the terms of office of elected officials. The ordinance establishes a mechanism by which the terms of office of elected officials are necessarily shortened upon a successful recall. *Leck* instructs that section 6(f) expressly requires approval by referendum of any alteration to the terms of office of elected officials. *Id*. at 529. We find unconvincing defendants' argument that plaintiffs' "terms of office" are not affected by the ordinance because the office of trustee still carries a four-year term. This reasoning is akin to *Williamson*'s focus on "de-selection" as opposed to "selection" and ignores the practical effect of the recall ordinance which is to shorten the term of any official subject to recall. Moreover, our supreme court implicitly rejected defendants' position in *Leck* when it observed that the runoff ordinance caused the terms of certain officials (who would have been sworn in without the runoff ordinance) to be shortened, while it lengthened the terms of others (who remained in office until the runoff was conducted). *Id*. Just as Lansing's ordinance affected the terms of office of those candidates subject to a runoff without changing the "term of office" attached to the position, so too does Dolton's ordinance impact the terms of office of those officials who are subject to recall. See also *Lipinski v. Chicago Board of Election Commissioners*, 114 Ill. 2d 95, 103 (1986) (recognizing that shortening an elected official's term is contrary to the statutes under which the official was elected).

¶ 22    Second, the ordinance changes the manner of selecting elected officials. For instance, Dolton voters currently elect trustees to a four-year term. Under the ordinance, in the event of a recall, the mayor appoints a new trustee to serve the remainder of the recalled trustee's four-year

term. But the electorate has not voted for or approved of the new method of creating a vacancy in an elected position that the mayor may then fill through appointment. Consequently, an elected position becomes an appointed position by virtue of the recall ordinance. Importantly, defendants define "recall" as "a procedure that allows citizens to remove and *replace* a public official before the end of a term of office." (Emphasis added.) Filling a vacancy with a new trustee necessarily entails "selection" and that power of selection is currently reserved to the electorate. But the ordinance deprives the electorate of that power and instead entrusts the mayor with the power to appoint a new official to serve in an elected office.

¶ 23    We find no significance in the supreme court's failure to overrule *Williamson* in *Leck*. As a threshold matter, *Leck* does not even mention *Williamson,* so any inference that the decision was brought to the supreme court's attention, much less that the court implicitly approved it, is tenuous, at best. Further, the cases posed distinct issues (recall ordinance enacted after referendum by a non-home rule unit vs. runoff ordinance enacted after referendum by a home rule unit) and involved different forms of local government. It is not surprising, therefore, that even if the court considered *Williamson*, it did not find it necessary to expressly overrule it. Thus, *Leck*'s failure to overrule *Williamson* does not support defendants' position.

¶ 24    We further recognize the purpose of *stare decisis* in lending consistency and predictability to the development of the law. Nevertheless, as our supreme court recognized recently in *People v. Castleberry*, "The doctrine of *stare decisis* expresses the policy of courts to adhere to precedent and settled points of law 'so that the law will not change erratically, but will develop in a principled, intelligible fashion.' [Citation.] The doctrine is not an inexorable command, however, and where good cause or compelling reasons justify departing from precedent we will do so." 2015 IL 116916, ¶ 19. Given our conclusion that Dolton's recall

ordinance was enacted in a manner that deprives its voters of their constitutional right to have a say in the manner of selecting and the terms of office of their elected officials, we believe this is an appropriate case to depart from the precedent established by *Williamson.*

¶ 25    Defendants describe the ordinance as allowing voters to remove an official from office under specific and limited circumstances in an effort to hold elected officials accountable. But the issue here is not the wisdom of recall, but the manner in which it can be effected. As we have found, the recall procedure specified in the ordinance required prior approval by referendum under section 6(f) because a successful recall alters the terms of office of an elected official and the manner of selection. Accordingly, the ordinance does not merely relate to the government and affairs of the municipality as defendants propose. Consequently, prior approval through a referendum of the recall procedure specified in the ordinance was required and absent that referendum approval, the ordinance is invalid.

¶ 26    The trial court's orders granting defendants' motion for judgment on the pleadings and denying plaintiffs' motion for summary judgment must be reversed. We further remand this matter to the trial court with directions to enter summary judgment in plaintiffs' favor as there is no genuine issue as to any material fact and plaintiffs are entitled to judgment as a matter of law.

¶ 27    Because we conclude that the ordinance is invalid as violative of section 6(f)'s limitation on a home rule unit's authority, we need not address the other constitutional grounds raised by plaintiffs as a basis to invalidate the ordinance.

¶ 28                                    CONCLUSION

¶ 29    *Williamson*'s observation that a home rule unit can enact a valid recall ordinance is accurate. But it begs the question of what process is required by the constitution to accomplish that end. A home rule unit like Dolton does have the power to enact a valid recall ordinance, but

only after it is approved via a valid voter referendum. We express no opinion here regarding the specifics of a valid recall ordinance, but because Dolton's ordinance contravenes the limitation on a home rule unit's powers under article VII, section 6(f) of the Illinois Constitution, it is invalid. For this reason, we reverse the orders appealed from and remand to the trial court with directions to enter summary judgment in favor of plaintiffs.

¶ 30          Reversed and remanded with directions.