# Illinois Official Reports

## Appellate Court

*Johnson v. Ames*, 2016 IL App (1st) 162770

| | |
|---|---|
| Appellate Court Caption | MAXINE JOHNSON, Petitioner-Appellee, v. MATTHEW AMES; THE VILLAGE OF BROADVIEW MUNICIPAL OFFICERS ELECTORAL BOARD, and Its Members, Judy Brown-Marino, Chairman, Kevin McGrier, Member, and Robert M. Hodge, Member; and DAVID ORR, in His Official Capacity as the Cook County Clerk, Respondents (Matthew Ames, Respondent-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-16-2770 |
| Filed | November 1, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-COEL-21; the Hon. Paul A. Karkula, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Luke P. Hajzl, of Chicago, for appellant.<br><br>James P. Nally, of Law Offices of James P. Nally PC, of Chicago, for appellee. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justice Reyes concurred in the judgment and opinion.
Justice Lampkin dissented, with opinion.


**OPINION**

¶ 1    After obtaining the signatures of hundreds of voters in the Village of Broadview, petitioner Maxine Johnson filed a "Petition for Referendum—Term Limits on Mayor's Office" with the clerk of the Village of Broadview. The petition sought to place a term limits question on the ballot for the November 8, 2016, general election. If passed by the voters on November 8, 2016, the referendum question would govern the eligibility of candidates seeking to run in the April 4, 2017, municipal election for village president, as well as in subsequent elections.

¶ 2    In response to an objector's petition, the Village of Broadview electoral board issued a decision on October 3, 2016, finding that the term limits question was vague and ambiguous because the question was unclear as to whether the limits applied prospectively or retroactively. On October 19, 2016, the trial court reversed the decision of the electoral board, finding that the question was not vague or ambiguous.

¶ 3    For the following reasons, we agree with the trial court and conclude that the question is not vague or ambiguous and, thus, order its placement on the November 8, 2016, ballot.


¶ 4                              BACKGROUND

¶ 5    The question at issue states:

"Shall the terms of office for those persons elected to the office of Village President in the Village of Broadview, at the April 4, 2017 consolidated election, and at each election for said office thereafter, be limited such that no person shall be eligible to seek election to or hold the office of Village President where that person has been previously elected to the office of Village President of the Village of Broadview for two (2) consecutive full four (4) year terms?"

¶ 6    As we observed above, on August 8, 2016, the proponent of the above question, Maxine Johnson, filed a petition signed by several hundred voters in the Village of Broadview. On August 15, 2016, an objector, Matthew Ames, filed an eight-count petition challenging the validity of this question.

¶ 7    On October 3, 2016, the electoral board issued a written decision sustaining only the third objection. Concerning the third objection, the board stated, in relevant part:

"In applying Illinois law, the Board finds that the Referendum is vague and ambiguous and cannot stand on its own terms and is therefore invalid and sustains the [objection]. The Referendum is uncertain with respect to whether a person's service as Village President prior to the passage of the Referendum is to be considered in determining if that person has served more than eight years in that position."

¶ 8    With respect to the other objections, the board noted that the second, seventh and eighth objections were withdrawn by the objector and, thus, were not considered by the board. With respect to the first objection, which was a challenge to the number and validity of the

signatures, the board heard evidence and concluded that the petition had the requisite number of valid signatures:

> "The Board makes the following Findings and Conclusions as to Objection I [which states: ']The Limit Referendum is invalid because it does not have the requisite number of signatures necessary to satisfy 10 ILCS 5/28-7.[[1]]

> The Proponent and the Objector filed motions pursuant to Rule 8 and 10 of the adopted rules of the Board. The Board heard evidence on the issues of signatures and voter registration and heard evidence as well as a records exam.

> The Board finds that the number of valid signatures appearing on the referendum petition following a completion of the records examination was 224 valid signatures which was 3 signatures over the statutory requirement of 221. Under the Election code 221 signatures were required which was calculated based on 8% of the total amount of voters in the local governmental unit which voted in the last governor's election. The Board therefore overrules Objection 1."

The objector had argued before the electoral board that the board should strike certain affidavits which were notarized by the proponent, Maxine Johnson, and which were submitted to rehabilitate certain signatures; and that, if these affidavits were struck, the petition would then have less than the statutorily required minimum of 221 signatures.

¶ 9    With respect to the fourth and fifth objections, which were claims that the question violated the voters' constitutional rights to vote and to associate, the board held that it had "no authority to decide United States Constitutional issues." With respect to the sixth objection, which claimed that the Village of Broadview was not empowered to impose term limits, the board concluded that no Illinois statute prohibited term limits.

¶ 10    The board's decision was a split 2 to 1 decision. The chairperson, who was the one dissenting member, filed a strong dissenting opinion stating that, in the week since the board's decision, she had shown the question to a number of her constituents and they all understood the calculation of a person's prior service to include "those persons who had already (previously) been elected Village President" and that any other conclusion was "ridiculous and absurd."

¶ 11    In response to the board's decision, the proponent of the question, Maxine Johnson, sought judicial review in the trial court. On October 19, 2016, the trial court issued a written order, which states in relevant part:

> "Both parties have introduced ancillary issues in their briefs, i.e., the timely convening of the Electoral Board and the validity of several notarized affidavits. The court believes that those matters were adequately addressed by the board and have little, if any, bearing on the case in chief.

> The issue in this case is the validity of the proposed referendum as drafted.

> An examination of the proposed ballot referendum and a comparative analysis of a recent case on point *Davis v. Welch*, 14 CH 13948 (Circuit Court of Cook County

---

[1]Section 28-7 of the Election Code provides, in relevant part, that a "public question may be initiated *** by the filing with the clerk or secretary of the governmental unit of a petition signed by a number of qualified electors equal to or greater than at least 8% of the total votes cast for candidates for Governor in the preceding gubernatorial election." 10 ILCS 5/28-7 (West 2014).

October 1, 2014), *affirmed* 2014 [IL App (1st) 142998-U] pertain to a referendum that was challenged on the same grounds as are being raised here. The Circuit Court of Cook County, affirmed by the Appellate Court, found that the term limit referendum, which would prevent current officeholders from seeking future terms based on consecutive terms of prior service, was both lawful and constitutional.

It is clear that the referendum in the case at bar is not vague or ambiguous but is effective upon passage, self-executing and applies prospectively."

¶ 12    The trial court then reversed the decision of the electoral board and ordered that the referendum question "shall appear on the ballot at the General Election November 8, 2016 in the Village of Broadview, Illinois."

¶ 13    On October 20, 2016, the objector, Matthew Ames, filed a motion with this court seeking an expedited appeal, in which he stated that the "referendum question at issue is currently on the 11/08/2016 general election ballot," and that "this matter requires action by the Court on or before 11/01/2016."

¶ 14    This court then granted his motion for an expedited appeal and directed: (1) the appellant to file a brief by October 25, 2016; (2) the appellee to file a brief by October 28, 2016; and (3) the appellant to file a reply brief by October 30, 2016. This court also ordered the appellant to "notify [the] clerk of the court and comply with all rules and procedures for the procurement of the record," so that the clerk of the circuit court could produce the record by October 28, 2016.

¶ 15    On October 25, 2016, the objector filed an appellate brief but the board failed to do so. Although the cover page of the brief is entitled the brief of "Respondents" in the plural, the text of the brief refers only to the "Appellant" in the singular and the "Certificate of Service" states that the brief was submitted by an attorney only "for Appellant Matt Ames," who was the objector. In addition, the objector requests that this court reverse one of the board's findings, which was that the petition was supported by the required number of signatures. By not filing a brief with this court, the board decided not to contest the trial court's findings on appeal and, thus, only the objector pursues this appeal.

¶ 16                                                    ANALYSIS

¶ 17    In the case at bar, the electoral board concluded in a 2 to 1 decision that the referendum question was vague and ambiguous. The trial court, however, reversed the decision of the board. For the following reasons, we agree with the dissenting board member that the question is not ambiguous and affirm the trial court's reversal of the board.

¶ 18                                        I. Standard of Review

¶ 19    " '[J]udicial review of the decision of an electoral board is intended to remedy arbitrary or unsupported decisions.' " *Anderson v. McHenry Township*, 289 Ill. App. 3d 830, 832 (1997) (quoting *Reyes v. Bloomingdale Township Electoral Board*, 265 Ill. App. 3d 69, 72 (1994)). While we review questions of fact deferentially and will disturb factual determinations only if they are against the manifest weight of the evidence, we review questions of law *de novo*. *Anderson*, 289 Ill. App. 3d at 832 (citing *Reyes*, 265 Ill. App. 3d at 72).

¶ 20    In the case at bar, whether the referendum question is vague and ambiguous is a legal question that we review *de novo*. *Roman v. Cook County Sheriff's Merit Board*, 2014 IL App (1st) 123308, ¶ 73 (whether the board's decision was vague was a question of law that we

reviewed *de novo*). See also *People v. Sharp*, 2015 IL App (1st) 130438, ¶ 138 (whether a statute was unconstitutionally vague such that its terms were "so ill-defined that their meaning will ultimately be determined by the opinions and whims of the trier of fact rather than objective criteria" was a pure question of law to which we applied *de novo* review). *De novo* consideration means that we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 21    When an appeal includes both a decision by an electoral board and a ruling by the trial court, we review the decision by the electoral board and not the ruling by the trial court. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008) ("where a circuit court reviews an electoral board's decision *** we review the decision of the board, not the court").

¶ 22                                    II. The Referendum Question

¶ 23    In finding the referendum question vague, the electoral board relied upon our supreme court's opinions in *Lipinski v. Chicago Board of Election Commissioners*, 114 Ill. 2d 95, 99-100 (1986), and *Leck v. Michaelson*, 111 Ill. 2d 523, 530 (1986), which held that a proposed referendum question must be able to stand on its own terms and offer the voters a coherent scheme for altering the election of their officials. If the referendum is not self-executing and has gaps, then it is vague and ambiguous. *Lipinski*, 114 Ill. 2d at 99-100 (citing *Leck*, 111 Ill. 2d at 530).

¶ 24    In its written decision, the board concluded that the referendum question was vague "with respect to whether a person's service as Village President prior to the passage of the Referendum is to be considered in determining if that person has served more than eight years in that position." The board found that the referendum question "does not specifically state whether the calculation of a person's prior service would include service occurring *prior* to the passage of the Referendum or after." (Emphasis added.) After finding that the referendum did not specifically state whether prior service counted, the board, nonetheless, concluded that prior service did *not* count, stating: "the limit of two consecutive terms only applies upon occurrence of a person being elected on April 4, 2017[,] and each election after and as such, it is only after the person has been elected does the limitation of prior service begin to accrue."

¶ 25    For the following reasons, we conclude that the referendum question is not vague or ambiguous. As we noted above, the question states:

> "Shall the terms of office for those persons elected to the office of Village President in the Village of Broadview, at the April 4, 2017 consolidated election, and at each election for said office thereafter, be limited such that no person shall be eligible to seek election to or hold the office of Village President where that person has been previously elected to the office of Village President of the Village of Broadview for two (2) consecutive full four (4) year terms?"

¶ 26    The question applies only to "those persons elected to the office *** in the April 4, 2017 consolidated election" and in all elections "thereafter." Eligibility to "seek" office is generally measured at the time the nominating petitions are due and filed for each election.[2] At that time,

_____

[2]*E.g.*, *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 12 (issue was whether the candidate was "ineligible for municipal office *** at the time she filed her nomination papers"). See also *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 219-20 (2008)

no person may "seek" the office if "that person has been *previously* elected" to the office "for two (2) consecutive full four (4) year terms." (Emphasis added.) If "that person" has already—previously—been elected for two consecutive full four-year terms, he or she is not eligible. In addition, no person who has been "elected to the office *** in the April 4, 2017 consolidated election" or in any election "thereafter" may "hold" the office if "that person has been previously elected for two (2) consecutive full four (4) year terms." Thus, we must conclude that the question is not vague or ambiguous.

¶ 27 In *Lipinski*, which was cited by the board, the referendum question contained the phrase "50% majority vote." *Lipinski*, 114 Ill. 2d at 103. Our supreme court observed that this phrase was meaningless, since the word "majority" meant a number greater than "50%." *Lipinski*, 114 Ill. 2d at 103; *Leck*, 111 Ill. 2d at 529-31 (the *Leck* decision also concerned a "50%" issue). Since the phrase "50% majority" was inherently contradictory, it was vague and ambiguous. Contrary to *Lipinski*, the referendum question before us contains no inherently contradictory phrases.

¶ 28 In its written decision, the board concluded that the referendum has retroactive application because a candidate's prior service may bar him or her from prospective service. However, prior conditions, such as where a candidate previously lived, may remove him or her from eligibility for a prospective office. *E.g.*, *Maksym v. Board of Election Commissioners*, 242 Ill. 2d 303, 308 (2011) (Rahm Emanuel would not have been eligible for election if he had not previously resided in Chicago). Thus, we do not find this argument persuasive.

¶ 29 III. Statutorily-Required Minimum Signatures

¶ 30 In addition to challenging the question itself, the objector's appellate brief also claims that the petition lacked the statutorily-required minimum signatures. The objector argues before this court that the electoral board should have struck certain affidavits which were notarized by the proponent, Maxine Johnson, and which were submitted to rehabilitate certain signatures; and that, if these affidavits were struck, the petition would then have less than the statutorily required minimum of 221 signatures. Specifically, the objector argues that section 6-104(b) of the Illinois Notary Public Act barred Maxine Johnson from serving as a notary public in connection with a referendum where she was the proponent. 5 ILCS 312/6-104(b) (West 2014).

¶ 31 The interpretation of a statute is a question of law that we also review *de novo*. *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 42. As we observed above, *de novo* consideration means that we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). With statutory interpretation, our primary goal is to ascertain the legislators' intent, and the best indication of their intent is the plain and ordinary meaning of the words which they chose to use. *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 30 (citing *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 287 (2008)).

¶ 32 Section 6-104(b) is quoted by both parties in their briefs to this court, and it states, in full: "A notary public shall not acknowledge any instrument in which the notary's name appears as a party to the transaction." 5 ILCS 312/6-104(b) (West 2014). If one applies the plain words of

("when a candidate submits his or her nomination papers to run for office, the candidate swears that he or she is—not will be—qualified for the office" he or she seeks).

this sentence to the facts of our case, the "instrument" is the petition which the voters signed, and "the notary's name" does *not* "appear[ ] as a party" anywhere on this instrument. Thus, the plain words of the statute require us to reject this argument, as did the trial court and all three board members.

¶ 33                                                    CONCLUSION
¶ 34        For the foregoing reasons, the decision of the board is reversed and the decision of the trial court is affirmed, and we order that the referendum question shall remain on the ballot.

¶ 35        Affirmed.

¶ 36        JUSTICE LAMPKIN, dissenting.
¶ 37        I respectfully dissent. I would hold that the referendum was unconstitutionally vague and ambiguous. I would conclude that the Municipal Officers Electoral Board of the Village of Broadview (Board) acted properly when it found the referendum invalid and granted the objector's motion for summary judgment. Accordingly, I would reverse the order of the circuit court that reversed the Board's decision.
¶ 38        The proposed referendum would ask the following question of the voters of the Village of Broadview:
        "Shall the terms of office for those persons elected to the office of Village President in the Village of Broadview, at the April 4, 2017 consolidated election, and at each election for said office thereafter, be limited such that no person shall be eligible to seek election to or hold the office of Village President where that person has been previously elected to the office of Village President of the Village of Broadview for two (2) consecutive full four (4) year terms?"
¶ 39        A referendum submitted under the provisions of section 6 or 7 of article VII of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §§ 6, 7) must "stand on its own terms" such that the voters can "be said to have approved a coherent scheme for altering the election of their officials." *Leck v. Michaelson*, 111 Ill. 2d 523, 530 (1986). Such referendum must not be "uncertain," and must not need "to be interpreted, supplemented and modified in order to be implemented." *Id.* A referendum that violates these requirements is "fatally defective under article VII *** of the 1970 Illinois Constitution because of its vagueness and ambiguity." *Id.*
¶ 40        Applying these standards to the referendum proposed here, I would conclude that the Board properly found it to be unconstitutionally vague and ambiguous. The referendum is uncertain with respect to whether a person's service as the village president of the Village of Broadview prior to the passage of the referendum and the April 2017 election is to be considered in determining if that person has served more than two consecutive full four-year terms. The referendum seeks to impose a term limit on the people elected to the office of village president by deeming a person who previously was elected to that office for two consecutive full four-year terms ineligible to seek election to or hold that office. Although this term limit would apply prospectively to the April 4, 2017 consolidated election and each election thereafter, the referendum as written is open to at least two interpretations concerning whether eight consecutive years of service as village president prior to April 2017 would prevent a person from seeking or holding that office after April 2017. The referendum does not

indicate whether the relevant calculation of a person's eight consecutive-year limit either includes or excludes a person's prior service occurring before the passage of the resolution and the 2017 election. The referendum merely states that the eight consecutive-year limit on eligibility is calculated based on having been "previously elected" to the office of village president. This unclear provision necessarily begs the question: previous to when?

¶ 41    The proponent's reliance on the unpublished order *Davis v. Welch*, 2014 IL App (1st) 142998-U for persuasive authority is misplaced. In *Davis*, the court concluded that a referendum related to limiting the terms of elected officials was clearly worded and self-executing. *Id.* ¶ 18. The text of the referendum at issue here, however, bears no similarity to the clear wording of the referendum at issue in *Davis*, which set forth a term limit for a specific office and included the phrase "with all prior consecutive terms of a current officeholder counted in determining term limits for that office holder." *Id.* ¶ 6. The clear statement in *Davis* that a person's prior terms in office would be included in determining the person's eligibility to hold office under the new term limits is completely absent in the text of the referendum at issue in the instant case.

¶ 42    Reading the proposed referendum in its entirety, I would conclude that it does not stand on its own terms such that voters can be said to have approved a coherent scheme for altering the election of their officers. *Leck*, 111 Ill. 2d at 530. A voter could reasonably conclude he or she was voting for a new term limit for the office of village president that would become effective April 2017 and determine a person's eligibility to seek or hold that office based on a calculation that either (1) included the person's eight consecutive-years of service that occurred previous to April 2017 or (2) excluded such service because the new term limits would become effective in the 2017 election and thereafter and would apply going forward only. Accordingly, just what the voters would be approving under this referendum would be uncertain, and the referendum is thus vague and ambiguous and therefore invalid. *Lipinski v. Chicago Board of Election Commissioners*, 114 Ill. 2d 95, 100 (1986). I, therefore, would affirm the Board's decision to sustain objection III and the Board's conclusion that the referendum was invalid and should not appear on the ballot.

¶ 43    Contrary to established law, the majority's analysis interprets, supplements, and modifies the language of the referendum by manipulating the sequence of the words and adding or omitting certain words to arrive at the conclusion that the referendum question is neither vague nor ambiguous. I believe the majority's holding that the referendum question will remain on the ballot should not be allowed to stand and "involves a question of such importance that it should be decided by the Supreme Court." Ill. S. Ct. R. 316 (eff. Dec. 6, 2006).