# Illinois Official Reports

## Supreme Court

---

### *Johnson v. Ames*, 2016 IL 121563

---

| | |
|---|---|
| Caption in Supreme Court: | MAXINE JOHNSON, Appellee, v. MATTHEW AMES, Appellant. |
| Docket No. | 121563 |
| Filed | December 30, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Paul A. Karkula, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Luke P. Hajzl, of Chicago, for appellant.<br><br>James P. Nally, James P. Nally, P.C., and Scott B. Erdman, of Scott B. Erdman, PC, both of Chicago, for appellee. |
| Justices | JUSTICE KILBRIDE delivered the judgment of the court, with opinion.<br>Chief Justice Karmeier and Justices Freeman, Garman, Burke, and Theis concurred in the judgment and opinion.<br>Justice Thomas specially concurred, with opinion. |

**OPINION**

¶ 1    This cause is before us on the appellate court's certificate of importance pursuant to Illinois Supreme Court Rule 316 (eff. Dec. 6, 2006), addressing whether a referendum seeking to impose term limits on the elected office of village president in the village of Broadview was invalid because it was vague and ambiguous. The village election board concluded that the proposition was vague and ambiguous because it did not clearly state whether the term limits were prospective or retroactive. On judicial review, the trial court reversed and reinstated the referendum on the November 8, 2016, general election ballot, finding the language was not vague or ambiguous. The appellate court affirmed. Because of the time constraints present in this election case, we granted the appellant's emergency motion for expedited consideration of the certificate of importance and affirmed the judgment of the appellate court, with our opinion to follow. We now issue our opinion on the question presented in the appellate court's certificate of importance.

¶ 2                                        I. BACKGROUND

¶ 3    Appellee Maxine Johnson filed a referendum petition seeking to place on the November 8, 2016, general election ballot the question of imposing term limits on the elected office of village president in the village of Broadview. Appellant Matthew Ames filed an objection on various grounds. Citing this court's decisions in *Leck v. Michaelson*, 111 Ill. 2d 523, 530 (1986), and *Lipinski v. Chicago Board of Election Commissioners*, 114 Ill. 2d 95 (1986), the village of Broadview electoral board voted 2 to 1 to invalidate the referendum as vague and ambiguous "because it is not clear whether the Referendum applies retroactively as well as prospectively," making it unable "to 'stand on its own terms.' " In her dissent, the board's chair relied on the understanding that she had universally heard from many constituents: the referendum applied to anyone who had been elected village president prior to the April 2017 election. Nonetheless, the board majority ordered that the proposition "shall not appear on the ballot in the November 8, 2016 election."

¶ 4    Johnson sought judicial review in the circuit court of Cook County. That court concluded the referendum was self-executing, not vague or ambiguous, and applied prospectively. The court ordered the referendum to appear on the general election ballot. On October 20, 2016, Ames filed a motion seeking expedited appeal that was granted by the appellate court. Following expedited briefing, a majority of the appellate court agreed with the election board dissent, concluding the referendum was not ambiguous. The court affirmed the trial court's reversal of the board's decision and ordered that the proposition remain on the ballot.

¶ 5    Objector Ames filed a petition for leave to appeal and an emergency motion for expedited consideration of that petition in this court. We allowed the emergency motion to expedite and denied the petition for leave to appeal on November 8, 2016. The proposition appeared on the village of Broadview ballot that day, but the results of the referendum were not released, in compliance with an appellate court injunction issued on November 2, 2016, pending the outcome of Ames's appeal to this court.

¶ 6    On November 14, 2016, the appellate court filed a certificate of importance in this court solely on the issue of whether the referendum was vague. Ill. S. Ct. R. 316 (eff. Dec. 6, 2006). Ames filed an emergency motion for expedited consideration of the Rule 316 certificate of

importance, expedited briefing schedule, and expedited decision. On November 17, 2016, this court allowed the emergency motion for expedited consideration and affirmed the appellate court decision, taking the case on the briefs filed in the appellate court and stating that an opinion would be filed in due course.

¶ 7   Johnson also filed an emergency motion on November 14, 2016, requesting that this court order the referendum results to be posted, and Ames filed an objection. We allowed Johnson's emergency motion and ordered the appellate court to vacate its injunctive order and the Cook County clerk to release the election results by 4:30 p.m. on November 16, 2016. We take judicial notice that the referendum was approved at the November 8, 2016, election. See *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 35 (indicating that we may take judicial notice of public records).

¶ 8                                   II. ANALYSIS

¶ 9   At the outset, we note that the certificate of importance issued by the appellate court in this case was legally ineffective, in that it was issued subsequent to appellant Ames having filed a petition for leave to appeal in this court. See *People v. Collins*, 202 Ill. 2d 59, 65 (2002) ("once a petition for leave to appeal is filed in this court, the appellate court loses jurisdiction over the cause"). Nevertheless, in the exercise of our supervisory authority and in accordance with our November 17, 2016, order affirming the appellate court's judgment, we choose to proceed with our consideration of this matter.

¶ 10   In his appellate court brief, Ames raised several issues, but we need address only the one presented in the appellate court's certificate of importance: "whether the following ballot question was vague: 'Shall the terms of office for those persons elected to the office of Village President in the Village of Broadview, at the April 4, 2017 consolidated election, and at each election for said office thereafter, be limited such that no person shall be eligible to seek election to or hold the office of Village President where that person has been previously elected to the office of Village President of the Village of Broadview for two (2) consecutive full four (4) year terms.' " On administrative review of an electoral board's decision pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2006)), the decision of the board is before us, not the order of the trial court or the appellate court. *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 19. Because the issue in this case is purely a matter of law, we review the board's decision *de novo*. *Jackson-Hicks*, 2015 IL 118929, ¶ 20.

¶ 11   The parties largely agree on the applicable law in this case. They both cite this court's decisions in *Leck v. Michaelson*, 111 Ill. 2d 523 (1986), and *Lipinski v. Chicago Board of Election Commissioners*, 114 Ill. 2d 95 (1986). The parties disagree, however, on how to apply those cases.

¶ 12   In *Leck*, voters filed a suit that challenged a referendum vote and subsequent ordinance mandating a runoff election if no candidate for a village office received 50% of the election votes. The referendum required a runoff election for " 'any candidates for public office *** who do not receive fifty percent (50%) of the votes cast for that office.' " The ordinance, however, declared the winner of the runoff election to be the candidate who received " 'the highest number of votes.' " *Leck*, 111 Ill. 2d at 526-27. According to the ordinance, a candidate who won the runoff election by a *plurality* vote could take the office, even though the

referendum required the winner to have a *majority* of the votes. This court examined the referendum and the ordinance, noting that neither clearly stated how to determine what constituted " '50% of the votes cast.' " Therefore, the referendum was vague and ambiguous. "Because the referendum could not stand on its own terms, *** the voters *** cannot be said to have approved a coherent scheme for altering the election of their officials," as required by the Illinois Constitution. *Leck*, 111 Ill. 2d at 530. For that reason, we declared the proposition "fatally defective" under the home rule provision of the 1970 Illinois Constitution "because of its vagueness and ambiguity." *Leck*, 111 Ill. 2d at 531.

¶ 13 Seven months later, this court adhered to that standard in another referendum case. In *Lipinski*, as in the present appeal, a proposed referendum was challenged. The referendum for Chicago's November 1986 election sought to have certain city officers " 'elected on a non-partisan ballot, by at least a 50% majority vote, but if no candidate receive[d] at least 50% of the votes cast for the respective office,' " a runoff election would be held between the two candidates receiving the most votes. *Lipinski*, 114 Ill. 2d at 97. The challengers alleged, in relevant part, that the proposition was vague and ambiguous.

¶ 14 Relying on our recent decision in *Leck*, we examined whether the referendum could " 'stand on its own terms' " and was "self-executing" or left "gaps to be filled by either the legislature or municipal body," creating uncertainty about what voters approved. *Lipinski*, 114 Ill. 2d at 99-100 (quoting *Leck*, 111 Ill. 2d at 530). We concluded that the proposition was fatally vague and ambiguous, citing a number of problems. First, it was unclear when the initial nonpartisan election required by the referendum would be held. *Lipinski*, 114 Ill. 2d at 100. Next, the court expressed concern that the number of signatures needed to become a candidate on a nonpartisan ballot would increase dramatically, creating a question of "[w]hether those who might vote for the nonpartisan referendum—with perhaps the idea of opening up the municipal election process—would be aware that it would be much more difficult to become a candidate for municipal office in Chicago." *Lipinski*, 114 Ill. 2d at 102. That lack of clarity would add to the uncertainty of what voters were approving. Moreover, the referendum was facially ambiguous because it referred to a " '50% majority vote,' " a term we deemed "self-contradictory." *Lipinski*, 114 Ill. 2d at 103. In addition, the proposition had the potential to shorten an incumbent officeholder's term, in violation of existing law, and did not indicate how two runoff candidates would be identified in the case of a second-place tie. *Lipinski*, 114 Ill. 2d at 103-04. Citing the criteria established in *Leck*, we concluded that "[t]he nonpartisan referendum proposition is too vague and ambiguous to qualify as a binding referendum *** because it leaves in its wake significant questions unanswered and details which conflict with the Election Code." *Lipinski*, 114 Ill. 2d at 104-05.

¶ 15 In this case, Ames argues that *Leck* and *Lipinski* require a referendum to include "clear and unequivocal language identifying [its] temporal reach" or risk being declared vague and ambiguous. He claims the language at issue here is vague and ambiguous as to when the "two (2) consecutive full four (4) year terms" must start to trigger ineligibility "to seek election or hold the office of Village President." We disagree. While the proposition admittedly did not provide an express date marking the relevant timeframe for the prior terms of office, that omission alone does not render the referendum invalid due to vagueness and ambiguity. The referendum is directed at that those "who seek election to or hold the office of Village President" beginning with the April 2017 election who have "been previously elected" to that office for two consecutive full terms. When read in its entirety, the language used explains that

the initial starting point for determining whether candidates were "previously elected" village president is the April 2017 election. We conclude that the meaning of the referendum is sufficiently clear even in the absence of an express statement of its "temporal reach."

¶ 16    Ames next contends that two clauses in the referendum require interpretation because they are inherently contradictory, violating *Leck* and *Lipinski*. He maintains that the first clause "implies" that the term limit requirement would first apply to the individual "elected to the office of Village President in the Village of Broadview, at the April 4, 2017 consolidated election." In other words, having been elected to two full terms in an office prior to the April 2017 election would not be a bar to running for that same office in the April 2017 election. Whoever wins that election would be subject to the two-term limit, however. Ames asserts that the referendum effectively creates a condition precedent that cannot be fulfilled prior to the April 2017 election. That clause, however, conflicts with the referendum's second clause that broadly states, "no person shall be eligible to seek election to or hold the office of Village President where that person has been *previously* elected to the office of Village President of the Village of Broadview for two (2) consecutive full four (4) year terms." (Emphasis added.) Ames argues that the use of the word "previously" in the second clause creates an ambiguity as to when the prior election must have occurred: on or before April 4, 2017. If the former, the second clause cannot be reconciled with the condition precedent in the first clause restricting the application of term limits to those elected "at" or after the April 2017 election. If the latter, then the second clause makes the first one superfluous.

¶ 17    We are not persuaded by Ames's argument. The first clause of the referendum presents voters with the question of whether the office of village president on or after April 2017 should be subject to new eligibility requirements. In its simplest form, the second clause defines those new eligibility requirements, barring anyone from seeking or holding the office of village president if previously elected to that office for two consecutive full terms. As the appellate court noted, eligibility to "seek" office is generally determined when nominating petitions are filed. 2016 IL App (1st) 162770, ¶ 26. See *Goodman v. Ward*, 241 Ill. 2d 398, 408-09 (2011) (noting various Election Code provisions and decisions of this court stating that eligibility for office is determined at the time nomination papers are filed). See also, *e.g.*, *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 12 (noting the issue was whether the candidate's tax arrearage made her ineligible for office "at the time she filed her nomination papers"). Therefore, the plain meaning of the referendum is that one who "has been previously elected *** Village President for two (2) consecutive full four (4) year terms" when the nominating petition is filed may not "seek election or hold the office" "at the April 4, 2017 consolidated election" or any subsequent election. Contrary to Ames's claim, the two clauses work together to create a complete and coherent eligibility scheme for anyone interested in running for or holding the office of Broadview village president. When read as a whole, the proposition is not vague or ambiguous.

¶ 18    While Ames suggests alternative variations that he asserts are clearer, a valid referendum need not be presented in optimal form. *Leck* and *Lipinski* merely mandate that the language used avoids the pitfalls of vagueness and ambiguity by permitting a clear determination of what voters approved. *Lipinski*, 114 Ill. 2d at 104-05; *Leck*, 111 Ill. 2d at 530-31. We hold that the referendum at issue in this case meets that basic standard and affirm the appellate court's judgment reversing the board's order finding the referendum invalid as vague and ambiguous.

¶ 19    Our construction properly provides for prospective application of the approved term limit restriction by changing the eligibility requirements for those candidates running for village president in elections beginning with the one slated for April 4, 2017. In other words, after the passage of the referendum, no candidate for village president in any election may have been previously elected to that office for two consecutive full terms. Altering the eligibility requirements for candidates in future elections has no retroactive impact. Indeed, that is precisely the type of change authorized for both home rule units and non-home rule units of government in our constitution. Ill. Const. 1970, art. VII, §§ 6(f), 7(3) (granting municipalities the power to provide for their officers, the way they are selected, and their terms of office by referendum). Thus, we need not address Ames's assertion that retroactive application of a referendum proposition is permissible only if it is expressly stated in the referendum itself.

¶ 20                              III. CONCLUSION

¶ 21    In addressing the appellate court's Rule 316 certificate of importance, we examined only whether the referendum at issue, imposing term limits on the village president in the village of Broadview, was invalid because it was vague and ambiguous. After applying the criteria we established in *Leck* and *Lipinski*, we conclude that the referendum was not vague or ambiguous. Accordingly, we affirm the judgment of the appellate court.

¶ 22    Affirmed.

¶ 23    JUSTICE THOMAS, specially concurring:

¶ 24    I agree entirely with the majority's analysis and conclusion. I write separately only to address the appellate court's determination that the granting of a certificate of importance was warranted in this case.[1]

¶ 25    In most instances, whether a lower court decision warrants review by this court is a matter left to this court's "sound judicial discretion." Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). And while the court may take any number of factors into consideration when exercising that discretion, this court has enumerated certain factors that "indicate the character of reasons which will be considered." *Id.* These include "the general importance of the question presented; the existence of a conflict between the decision sought to be reviewed and a decision of the Supreme Court, or of another division of the Appellate Court; the need for the exercise of the Supreme Court's supervisory authority; and the final or interlocutory character of the judgment sought to be reviewed." *Id.* In short, this court's decision to grant review turns largely on whether the issue involved warrants an authoritative resolution of statewide impact or whether it is the type of case whose final resolution we may entrust to the appellate court.

¶ 26    That said, the Illinois Constitution provides that an appeal from the appellate court to this court exists as "a matter of right" whenever "a division of the Appellate Court certifies that a case decided by it involves a question *of such importance* that the case should be decided by the Supreme Court." (Emphasis added.) Ill. Const. 1970, art. VI, § 4(c). And while the

---

[1]The court correctly concludes that the certificate of importance issued in this case was legally ineffective for lack of jurisdiction. I write not to dispute that point but only to address the appellate court's determination that this is the type of case that warrants such certification.

constitution does not specify what types of cases rise to this level, I would like to think that, at the very least, our appellate court would be guided by the factors set forth in Rule 315, thereby reserving the exercise of its certification power only for those rare cases that truly compel an authoritative resolution of statewide impact.

¶ 27 Which brings me to this case. As certified by the appellate court, the question of "such importance that the case should be decided by the Supreme Court" is whether the local ballot initiative at issue in this case "was vague." This question does not require this court to construe any constitutional or statutory language, to resolve any conflict in the appellate court or between this court and the appellate court, or to correct any errant exercise of judicial power. On the contrary, and as today's decision makes all too manifest, it requires this court only to read and interpret a local ballot initiative that was drafted locally, applies locally, and almost certainly will never appear again in the same form on any ballot anywhere. It is a question whose resolution, while no doubt of tremendous and understandable importance to the approximately 8000 residents of Broadview, will be of no consequence and at best only passing interest to the approximately 12.8 million Illinois residents who do *not* live in Broadview. It is purely a local matter, never again to be repeated. And as such, it is the very opposite of "a question of such importance that the case should be decided by the Supreme Court."

¶ 28 The appellate court's power to compel review by this court is a serious one and one that historically the appellate court only rarely exercises. I would hope that, in the future, our appellate court would recommit itself to exercising that power with the restraint, sobriety, and cautious discretion it deserves.