2023 IL App (4th) 221075

NO. 4-22-1075

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 31, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JESSICA THOMAS, in Her Official Capacity as Auditor of the County of Peoria, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Peoria County |
| v. | ) | No. 21MR992. |
| THE COUNTY OF PEORIA, a Body Politic and Corporate; ANDREW RAND, in His Official Capacity as Chairman of the Board of Peoria County; and JAMES FENNELL, in His Official Capacity as Vice-Chairman of the Board of Peoria County, | ) ) ) ) ) | Honorable James A. Mack, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Cavanagh and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1            Defendants—the County of Peoria; Andrew Rand, in his official capacity as Chairman of the Board of Peoria County; and James Fennell, in his official capacity as Vice-Chairman of the Board of Peoria County—appeal from the trial court's grant of a preliminary injunction to plaintiff—Jessica Thomas, in her official capacity as auditor of Peoria County. The preliminary injunction barred defendants from immediately abolishing the office of county auditor and required defendants to maintain the status quo of the office until further order of the court. Defendants argue that (1) plaintiff lacks standing to obtain a preliminary injunction, (2) a balancing of the equities favors dissolution of the injunction, and (3) plaintiff cannot identify a

clear duty on the part of defendants necessary to support *mandamus* relief. We reverse and remand based on our resolution of the first issue.

¶ 2                                          I. BACKGROUND

¶ 3          Plaintiff was elected to a four-year term as auditor of Peoria County in the 2020 General Election. In November 2021, plaintiff, acting in her official capacity, filed a complaint for *mandamus* against defendants, alleging, in part, that various responsibilities had been reallocated away from her office during her tenure and that defendants intended to substantially reduce the funding to her office. Specifically, the complaint alleged that defendants, *inter alia*, transferred to the Finance Department the responsibility of filing certified payroll documentation with the Illinois Department of Labor. The complaint further alleged that defendants adopted a budget that would reduce funding for the auditor's office by 53.4% in fiscal year 2022. Accordingly, plaintiff sought, in part, (1) a preliminary injunction that would prohibit defendants from implementing the budget cuts and (2) a writ of *mandamus* requiring defendants to fund the auditor's office and to restore all duties to the office. Defendants subsequently filed their answer and affirmative defenses, which included a claim that plaintiff lacked standing because there was no injury to any legally cognizable interest.

¶ 4          At the November 8, 2022, General Election, while this case was pending, Peoria County voters approved a referendum question on the ballot that read:

> "Shall Peoria County eliminate the internal Office of County Auditor when Peoria County already has an external Auditor as required by state law? This would be a cost savings of approximately $150,000 annually."

On November 11, 2022, defendants informed plaintiff in a letter that the "Office of Auditor will be eliminated as of November 30, 2022, pursuant to the General Election Referendum."

Defendants also noted that Peoria County would cease funding the office "[b]ecause the Office is abolished" and directed plaintiff to "wind up any remaining affairs."

¶ 5        On November 16, 2022, plaintiff filed an emergency motion for leave to file a first amended complaint, which would add claims seeking (1) a declaratory judgment that defendants improperly sought to terminate the auditor's office before the conclusion of her elected term, (2) a preliminary injunction prohibiting defendants from failing to fund the auditor's office on November 30, 2022, and (3) a writ of *mandamus* requiring defendants to properly fund the auditor's office until the conclusion of her elected term in 2024. Plaintiff also filed an emergency motion for temporary restraining order to "[e]njoin Defendants from…ceasing funding of the office of the Auditor effective November 30, 2022 until further notice of the Court."

¶ 6        The trial court held a hearing on plaintiff's emergency motions on November 17, 2022. During the hearing, the court granted plaintiff leave to file her first amended complaint. Plaintiff then argued—relying on *Leck v. Michaelson*, 111 Ill. 2d 523 (1986), and *Lipinski v. Chicago Board of Election Commissioners*, 114 Ill. 2d 95 (1986)—that the court should issue a temporary restraining order because the referendum was vague in that it did not include an effective date, and therefore, it was not self-executing. Thus, plaintiff argued that the referendum could not have shortened her term, as doing so would infringe her "ascertainable right in fulfilling her elected term as auditor." Defendants responded that plaintiff failed to establish that she has a clearly ascertainable right, explaining that all interests plaintiff had to the office of auditor ceased once the voters passed the referendum eliminating that office. The court granted plaintiff's motion for a temporary restraining order, directing the County to "maintain the status quo of the Peoria County Auditor's Office until the hearing for preliminary injunction on November 28, 2022."

¶ 7        On November 23, 2022, plaintiff filed a motion for a preliminary injunction to prevent defendants from ceasing funding to the auditor's office until the end of her elected term. The trial court held a hearing on plaintiff's motion for a preliminary injunction on November 28, 2022. At the hearing, plaintiff reiterated her argument that the referendum approved by the voters was not self-executing because it did not contain an effective date; therefore, the referendum was vague and ambiguous. Defendants again responded that the auditor's office was eliminated when the voters passed the referendum, and thus, plaintiff no longer had a clearly ascertainable right to the auditor's office. In reply, plaintiff argued that she "won an election and is just trying to fulfill her term."

¶ 8        The trial court granted plaintiff's motion for a preliminary injunction. In so ruling, the court determined that plaintiff had "an ascertainable right to the office she was elected to." Additionally, the court noted that there was no adequate remedy at law because, if the office was prematurely abolished, "[y]ou can't go back and award money that's going to compensate *** it." The court found that, although the likelihood of success was the "closest of the four factors," *Leck* and *Lipinski* tipped the analysis "slightly in plaintiff's favor." Finally, in balancing the harms, the court noted that the harm in prematurely and improperly abolishing the auditor's office would be greater than the cost of maintaining the status quo.

¶ 9        On November 30, 2022, the trial court entered a written order providing that plaintiff's motion for a preliminary injunction was "granted for the reasons stated in open court." The order "require[d] Defendants to maintain the status quo of the Peoria County Auditor's Office until further order of court."

¶ 10    On December 2, 2022, defendants filed their answer to plaintiff's first amended complaint. Therein, defendants reasserted, *inter alia*, their affirmative defense that plaintiff lacked standing because she could establish no injury to a legally cognizable interest.

¶ 11    On December 9, 2022, defendants filed this interlocutory appeal challenging the trial court's grant of a preliminary injunction.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, defendants argue that (1) plaintiff lacks standing to seek a preliminary injunction, (2) a balancing of the equities favors dissolution of the injunction, and (3) plaintiff cannot identify a clear duty on the part of defendants necessary to support *mandamus* relief (defendants also raised a *res judicata* claim in their opening brief but abandoned that claim in their reply brief). Plaintiff responds that she has standing to seek a preliminary injunction and that she established all requirements necessary to obtain one. Because defendants' standing argument is dispositive of this appeal, we address only that issue.

¶ 14    "As the concept of standing relates to a preliminary injunction, it requires a plaintiff to establish that he has a clearly ascertainable right or interest which needs protection." *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.*, 143 Ill. App. 3d 285, 292 (1986). In general, the doctrine of standing makes it necessary for a party seeking relief to allege an injury in fact to a substantive interest he or she possesses, which is recognized by statute or common law. *Village of Lake in the Hills*, 143 Ill. App. 3d at 292. The doctrine acts to ensure that courts are accessible to resolve actual controversies between parties and not address abstract questions, moot issues, or cases brought on behalf of others who might not desire judicial aid. *Village of Lake in the Hills*, 143 Ill. App. 3d at 292. "The claimed injury, whether actual or threatened, must be (1) distinct and palpable, (2) fairly traceable to the defendant's actions, and (3) substantially likely to be prevented

- 5 -

or redressed by the grant of the requested relief." *Beyer v. Board of Education*, 2019 IL App (1st) 191152, ¶ 46. We review *de novo* the issue of standing. *Beyer*, 2019 IL App (1st) 191152, ¶ 46; see *Clinton Landfill, Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378-79 (2010) (stating while review of trial court's grant or denial of preliminary injunction is generally for abuse of discretion, where court makes no factual findings and rules on a question of law, review is *de novo*).

¶ 15 On appeal, defendants argue that plaintiff has no standing to seek an injunction because, having brought this action in her official capacity and not as a voting taxpayer, such standing must be grounded in a clearly ascertainable right to serve as county auditor and not grounded in protecting the rights of third-party voters. See *Village of Lake in the Hills*, 143 Ill. App. 3d at 292 (stating the doctrine of standing ensures courts do not address cases brought on behalf of others who may not desire judicial aid). Defendants also assert that plaintiff can establish no clearly ascertainable right to serve as county auditor because her "rights to the Office ceased" once the voters passed the referendum to eliminate the office. Because plaintiff no longer has any right to the office of county auditor, defendants argue, plaintiff faced no injury to any substantive interest when she sought a preliminary injunction on November 23, 2022, and therefore, she lacks standing to obtain injunctive relief.

¶ 16 Plaintiff responds that defendants forfeited this argument because they "never challenged her standing to pursue her claims" in the trial court. Plaintiff further argues that, forfeiture aside, she does have standing to seek an injunction because she has an ascertainable right to finish her term of office free of interference from defendants. Specifically, plaintiff argues that, because the Peoria County voters elected her to a four-year term as auditor in 2020 and because the referendum "lacked any implementation instructions or temporal language sufficient to end

her elected term," the referendum was vague and was not self-executing. Thus, plaintiff contends, "the voters' decision to terminate the Auditor's Office is not effective, if at all, until the end of Plaintiff's term in 2024."

¶ 17        Initially, we reject plaintiff's assertion that defendants forfeited their argument that plaintiff lacks standing. A lack of standing in a civil case is an affirmative defense that is forfeited if not raised in a timely fashion in the trial court. *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 61. Here, the record clearly establishes that defendants raised the issue of standing in the trial court. Defendants pleaded lack of standing as an affirmative defense in their answer to plaintiff's complaint for *mandamus* (and again in their answer to plaintiff's first amended complaint for *mandamus*), asserting that plaintiff could show no injury to a legally cognizable interest. See *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 24 ("Once a plaintiff has filed a complaint, a defendant may raise the plaintiff's lack of standing as an affirmative defense.") and *Adeyiga*, 2014 IL App (1st) 131252, ¶¶ 59, 63-64 (rejecting plaintiff's contention that defendants waived their argument that plaintiff lacked standing where the issue of standing was pled as an affirmative defense in answer). Then, at the hearings on plaintiff's motions for a temporary restraining order and a preliminary injunction, defendants extensively argued that plaintiff had no clearly ascertainable right or interest in serving as county auditor because the November 8, 2022, passage of the referendum eliminated that office. Accordingly, we conclude that defendants have preserved the issue of standing. Thus, we turn to the issue of whether plaintiff has standing to seek an injunction in this case.

¶ 18        Plaintiff argues that, although the voters approved the referendum eliminating the office of county auditor, she still has standing to pursue an injunction. Plaintiff asserts that, per *Leck* and *Lipinski*, her elected term as auditor could not have been shortened by referendum, absent

clear language therein stating as much. Because the referendum specified no date upon which the office would be abolished, plaintiff argues, the referendum failed to comply with *Leck* and *Lipinski*, as it was vague and not self-executing. Plaintiff asserts that, because her term cannot be shortened, the effective date of the referendum cannot be until after her term expires. Accordingly, plaintiff argues, she has standing to seek an injunction because she retains an ascertainable interest in her office and because that interest is threatened by defendants' efforts to cease funding to her office. This argument is unavailing. Contrary to plaintiff's claim, we determine that the referendum complied with *Leck* and *Lipinski*'s standard that the language used in referenda must avoid the pitfalls of vagueness and ambiguity by permitting a clear determination of what the voters approved. The November 8, 2022, referendum had the effect of eliminating the office of county auditor, such that plaintiff cannot establish that she has a clearly ascertainable interest.

¶ 19    In *Leck*, the voters approved a referendum in April 1979 that read:

"Shall a run-off election be held for any candidates for public office in the Village of Lansing who do not receive fifty-percent (50%) of the votes cast for that office[?]" (Internal quotation marks omitted.) *Leck*, 111 Ill. 2d at 526.

In July 1979, the village passed an ordinance intending to "implement" the referendum, but the ordinance included several additions not contemplated by the referendum. *Leck*, 111 Ill. 2d at 526-27. These additions included (1) a third election that would take place after the party primary in February and the general election in April, (2) a limitation on the number of candidates eligible to run in a run-off to two individuals, and (3) a declaration that the winner of the runoff would be the candidate who received the highest number of votes. *Leck*, 111 Ill. 2d at 526-27. Our supreme court held that the referendum was vague and ambiguous. *Leck*, 111 Ill. 2d at 530. The court explained that article VII, section 6(f) of the Illinois Constitution empowers home rule units to

adopt or alter a form of government " '*only as approved by referendum*.' " (Emphasis in original.) *Leck*, 111 Ill. 2d at 527 (quoting Ill. Const. 1970, art. VII, § 6(f)). The referendum, however, was not self-executing and gave no indication of how or when the runoff would be conducted. *Leck*, 111 Ill. 2d at 528-29. The ordinance, in turn, added a later runoff election that shortened the terms of office of those trustees who would not be elected until the runoff, while lengthening the terms of those officials who would remain in office until their successors were determined by the runoff. *Leck*, 111 Ill. 2d at 529. Further, the ordinance contradicted the verbiage of the referendum because it (1) limited the number of candidates in each runoff to two, despite the referendum's language that a run-off would be held for *any* candidates who did not receive fifty percent of the votes, and (2) permitted candidates to win by a simple plurality, even though the referendum required the winner to have a majority of the votes. *Leck*, 111 Ill. 2d at 529. Moreover, neither the referendum nor the ordinance specified how to calculate the 50% vote requirement. *Leck*, 111 Ill. 2d at 529-30. The supreme court noted that it could not be said that the voters approved a coherent scheme for altering the election of their officials, as exactly "what was approved by the voters [was] uncertain." *Leck*, 111 Ill. 2d at 530. Because the bare concept in the referendum "had to be interpreted, supplemented and modified in order to be implemented," the referendum could not stand on its own terms, and the court held that it was invalid. *Leck*, 111 Ill. 2d at 530-31.

¶ 20    In *Lipinski*, the supreme court applied *Leck* to the following proposed referendum:

"Shall the mayor, the treasurer and the clerk of the City of Chicago be elected on a non-partisan ballot, by at least a 50% majority vote, but if no candidate receives at least 50% of the votes cast for the respective office, then in a run-off election between the two candidates for the office who received the greatest number of votes

for that office at the initial election?" (Internal quotation marks omitted.) *Lipinski*, 114 Ill. 2d at 97.

The court examined whether the referendum could stand on its own terms, was self-executing, or left gaps to be filled by the legislature or municipal body, such as would create uncertainty about what voters approved. *Lipinski*, 114 Ill. 2d at 99-100. The court concluded that the proposed referendum was invalid because it was fatally vague and ambiguous. *Lipinski*, 114 Ill. 2d at 103. The court explained that the proposition did not specify at which election it would take effect, and there would be no way to determine, if submitted to the voters, when the voters intended it to take effect. *Lipinski*, 114 Ill. 2d at 100. Additionally, the proposition "could create a constitutional problem," as it would (1) reduce the time for candidates to circulate their nominating petitions, (2) increase the number of signatures required to become a nonpartisan candidate, and (3) shorten the incumbent mayor's four-year term of office in violation of existing law. *Lipinski*, 114 Ill. 2d at 100-103; see also 65 ILCS 20/21-5(b) (West 2020) (noting mayor of Chicago "shall hold his or her office for 4 years"). Finally, the referendum was ambiguous on its face because the phrase "50% majority vote" was self-contradictory. *Lipinski*, 114 Ill. 2d at 103. The court held that, as in *Leck*, the referendum at issue was not self-executing because it was too vague and ambiguous and would have to be interpreted, supplemented, and modified in order to be implemented. *Lipinski*, 114 Ill. 2d at 104-05.

¶ 21        Defendants argue that, unlike the referenda at issue in *Leck* and *Lipinski*, which created wide-ranging uncertainties regarding how to conduct upcoming elections and required interpretation and modification to be implemented, the referendum here was straightforward. We agree.

- 10 -

¶ 22 We find *Johnson v. Ames*, 2016 IL 121563, instructive. In *Johnson*, the appellee sought to include the following referendum question on the November 8, 2016, General Election ballot:

> "Shall the terms of office for those persons elected to the office of Village President in the Village of Broadview, at the April 4, 2017 consolidated election, and at each election for said office thereafter, be limited such that no person shall be eligible to seek election to or hold the office of Village President where that person has been previously elected to the office of Village President of the Village of Broadview for two (2) consecutive full four (4) year terms[?]" (Internal quotation marks omitted.) *Johnson*, 2016 IL 121563, ¶ 10.

After the appellant filed an objection, the village electoral board voted to invalidate the referendum, believing it to be vague and ambiguous for failing to indicate whether it applied both retroactively and prospectively, thereby making it unable to stand on its own terms. *Johnson*, 2016 IL 121563, ¶ 3. The trial court reversed the board's decision, finding that the referendum was self-executing, not vague or ambiguous, and applied prospectively. The appellate court affirmed the trial court. *Johnson*, 2016 IL 121563, ¶ 4. On appeal to our supreme court, the appellant argued that *Leck* and *Lipinski* required referenda to include clear language identifying their temporal reach to avoid being vague and ambiguous. *Johnson*, 2016 IL 121563, ¶ 15. The appellant argued that the language of the referendum was vague and ambiguous because it did not state "when the 'two (2) consecutive full four (4) year terms' must start to trigger ineligibility 'to seek election or hold the office of Village President.' " *Johnson*, 2016 IL 121563, ¶ 15. Our supreme court rejected that argument and concluded that the referendum met the "basic standard" mandated by *Leck* and *Lipinski*. *Johnson*, 2016 IL 121563, ¶¶ 15, 18. The court explained that *Leck* and *Lipinski* "merely

mandate that the language used avoids the pitfalls of vagueness and ambiguity by permitting a clear determination of what voters approved." *Johnson*, 2016 IL 121563, ¶ 18. The court noted that, while the proposition at issue "admittedly did not provide an express date marking the relevant timeframe for the prior terms of office, that omission alone does not render the referendum invalid," as "a valid referendum need not be presented in optimal form." *Johnson*, 2016 IL 121563, ¶¶ 15, 18. The court explained that, when read in its entirety, the referendum identified that the starting point for determining whether candidates were "previously elected" village president was the April 2017 election. *Johnson*, 2016 IL 121563, ¶ 15. Thus, even absent an express statement of its temporal reach, the referendum was sufficiently clear to be valid. *Johnson*, 2016 IL 121563, ¶ 15.

¶ 23        Like *Johnson*, we reject plaintiff's argument that the referendum was invalid for lack of express "temporal language." Article 7, section 4 of the Illinois Constitution provides, in relevant part, "[*e*]*xcept as changed pursuant to this Section*, elected county officers shall be elected for terms of four years at general elections as provided by law." Ill. Const. 1970, art. VII, § 4(c). Thus, although section 4(c) establishes a four-year term for county officers, it permits that term to be changed if done pursuant to that section. One of the changes permitted by section 4(c) is that "[a]ny office may be *** eliminated *** by county-wide referendum." Ill. Const. 1970, art. VII, § 4(c). Accordingly, section 4(c) permitted Peoria County voters to eliminate the office of county auditor prior to the completion of plaintiff's four-year term. We conclude that, when read in its entirety, the referendum is sufficiently clear that it invoked the voters' constitutional ability under section 4(c) to eliminate a county office prior to the expiration of plaintiff's four-year term. The referendum asked whether voters wished to "eliminate" the office without qualification. The referendum did not contain any language indicating that voters' constitutional ability to eliminate

the office immediately would yield to allow the plaintiff to complete her term. Nor did it indicate that the effect of the referendum's passage would be postponed to a future date. Additionally, the referendum provided context for this question by referencing the fact that Peoria County "already," *i.e.*, "currently," "has an external Auditor as required by state law." As the referendum explicitly said that Peoria County already has an external auditor and asked whether the office of county auditor should be eliminated for that reason, we are unconvinced that the referendum allowed plaintiff to serve out the remainder of her term.

¶ 24        As explained in *Johnson*, a referendum need only meet the "basic standard" set forth in *Leck* and *Lipinski*, which "merely mandate[s] that the language used avoids the pitfalls of vagueness and ambiguity by permitting a clear determination of what voters approved." *Johnson*, 2016 IL 121563, ¶ 18. While including an express date indicating the temporal reach of the referendum may have made the referendum clearer, we do not believe this omission rendered the referendum invalid. *Johnson*, 2016 IL 121563; see also *Jones v. Municipal Officers Electoral Board*, 2021 IL 126974, ¶¶ 3, 14 (stating though the referendum at issue did not include express legal effective date, such legal effective date was November 24, 2020, when results of the referendum were certified). We conclude that, even without explicit temporal language, the referendum here, when read in its entirety, provided a clear determination of what voters approved—the immediate elimination of the office of county auditor in accordance with the voters' power under article VII, section 4(c) because an external auditor already exists.

¶ 25        Because we conclude that the referendum was valid and eliminated the office of county auditor upon certification of the referendum result, we hold that plaintiff lost any right she had to the office. See *Taylor v. County of St. Clair*, 57 Ill. 2d 367, 374 (1974) ("The plain language of section 4(c) permits local referendum action relating to county offices without a correlative

statute or ordinance."), and *Anderson v. McHenry Township*, 289 Ill. App. 3d 830, 834 (1997) (stating that, if the referendum to dissolve township were to pass, township officers "would be required immediately to wind up the affairs of the municipality *** without regard to the staggering of their terms of office" and citing, with approval, 1972 Ill. Att'y Op. 215, 218 for the proposition that "when an office is abolished all rights to that office *** cease"). Plaintiff, therefore, faces no injury to a clearly ascertainable interest. Thus, she has no standing to obtain injunctive relief.

¶ 26                                    III. CONCLUSION

¶ 27          For the reasons stated, we reverse the trial court's order granting plaintiff's motion for preliminary injunction and remand with directions to dissolve the preliminary injunction.

¶ 28          Reversed and remanded with directions.

*Thomas v. County of Peoria*, 2023 IL App (4th) 221075

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 21-MR-992; the Hon. James A. Mack, Judge, presiding. |
| **Attorneys for Appellants:** | James G. Sotos, Lisa M. Meador, Thomas J. Sotos, and Elizabeth R. Fleming, of The Sotos Law Firm, P.C., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Justin M. Penn and Stephen D. Mehr, of Hinshaw & Culbertson LLP, of Chicago, for appellee. |