2025 IL App (4th) 241121

NO. 4-24-1121

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 2, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JESSICA THOMAS, Auditor of the County of Peoria, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Peoria County |
| THE COUNTY OF PEORIA; ANDREW RAND, in His | ) | No. 21MR992 |
| Official Capacity as Chairman of the Board of Peoria | ) | |
| County; and JAMES FENNELL, in His Official Capacity | ) | Honorable |
| as Vice-Chairman of the Board of Peoria County, | ) | Stewart James Umholtz, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Steigmann and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1    This case returns to us following our remand in *Thomas v. County of Peoria*, 2023

IL App (4th) 221075. Plaintiff, Jessica Thomas, in her official capacity as auditor of Peoria County,

now appeals from the trial court's final order in her *mandamus* and declaratory judgment action

against defendants—the County of Peoria; Andrew Rand, in his official capacity as chairman of

the board of Peoria County; and James Fennell, in his official capacity as vice-chairman of the

board of Peoria County. The court's order (1) dismissed plaintiff's action with prejudice and

(2) awarded in part and denied in part her request for attorney fees and costs. Plaintiff argues the

court abused its discretion in denying a portion of the attorney fees she requested because the court

improperly concluded that the order appointing a special prosecutor to represent her did not grant

her counsel authority to prosecute some counts seeking declaratory relief. We affirm in part, reverse in part, and remand.

¶ 2                                    I. BACKGROUND

¶ 3        As our opinion from defendant's prior appeal set forth much of the factual background of this matter, we discuss here only those facts necessary to provide context for this appeal. See *Thomas*, 2023 IL App (4th) 221075, ¶¶ 3-11.

¶ 4        Plaintiff was elected to serve a four-year term as auditor of Peoria County in the 2020 general election. On November 15, 2021, plaintiff initiated the instant action in her official capacity as auditor seeking *mandamus* and declaratory relief. The action arose out of plaintiff's allegations that defendants improperly (1) usurped her authority by stripping her office of various responsibilities and (2) sought to eliminate the office of auditor by defunding it. Broadly, plaintiff sought relief that would require defendants to reinstate the duties stripped from her office and restore such funding as would allow her to complete her duties.

¶ 5        On December 10, 2021, the trial court, the Honorable David A. Brown presiding, found the Peoria County state's attorney had a duty to represent both plaintiff and defendants, such that an actual conflict of interest existed. Accordingly, pursuant to section 3-9008(a-10) of the Counties Code, the court ordered the "appointment of a competent attorney to prosecute the cause/proceeding on Plaintiff's behalf." See 55 ILCS 5/3-9008(a-10) (West 2020) (stating the court may appoint a competent attorney to prosecute the cause, proceeding, or matter if it finds the state's attorney has an actual conflict of interest in a specific case). The court appointed plaintiff's current private counsel as special prosecutor on April 11, 2022.

¶ 6        While this litigation was pending, defendants passed a resolution allowing a referendum (Referendum) to be placed on the November 8, 2022, general election ballot asking

whether the office of Peoria County auditor should be eliminated. Specifically, the Referendum asked:

> "Shall Peoria County eliminate the internal Office of County Auditor when Peoria County already has an external Auditor as required by state law? This would be a cost savings of approximately $150,000 annually."

Peoria County voters approved the Referendum during the November 8, 2022, general election. On November 11, 2022, defendants sent plaintiff a letter indicating the "Office of Auditor will be eliminated as of November 30, 2022 pursuant to the General Election Referendum" and, accordingly, "the County will cease funding it."

¶ 7    Upon receipt of defendants' letter, plaintiff, on November 16, 2022, filed a motion for leave to file an amended complaint. Paragraph one of the proposed amended complaint stated, "Plaintiff *** at all relevant times was and is the duly elected Auditor of the County of Peoria. Plaintiff brings this lawsuit in her official capacity as Auditor of the County of Peoria." The proposed complaint included new facts detailing defendants' November 11, 2022, letter and added two additional counts. In count XII, plaintiff alleged defendants sought to use the Referendum to "end the [auditor's] term on November 30, 2022," which "infringed upon [the] statutorily protected power of the Auditor." Accordingly, plaintiff requested (1) a declaratory judgment that "any action to end the term of the elected County Auditor by the Defendants prior to the end of her elected term *** is unconstitutional as it improperly violates Voters' Constitutional rights" and (2) a permanent injunction prohibiting defendants "from ending the elected term of the [auditor] based upon the 2022 General Election at any point prior to the natural conclusion of her elected term in 2024." In count XIII (mislabeled in the amended complaint as another count XII), plaintiff alleged defendants' refusal to fund her office after November 30, 2022, would hinder her "ability to carry

- 3 -

out her statutorily mandated and protected duties." Accordingly, plaintiff requested (1) a preliminary injunction enjoining defendants from ceasing to fund the office on November 30, 2022, and (2) a writ of *mandamus* directing defendants to restore such funding as would allow plaintiff's office to perform its duties. Both count XII and count XIII indicated they "restate[d] the allegations set forth in paragraphs 1 through 77 as if fully set forth herein."

¶ 8 The trial court, the Honorable James A. Mack presiding, held a hearing on plaintiff's motion for leave to file an amended complaint on November 17, 2022. Plaintiff argued she would "effectively be denied all relief if [Y]our Honor doesn't give us the opportunity to amend our mandamus claim to seek to enjoin them from ceasing to fund on November 30th." Defendants opposed the motion, arguing plaintiff had long been aware of their efforts to eliminate the office but made no effort for months to amend the complaint to raise the proposed claims. Additionally, defendants argued the proposed amendments were not sufficiently related to the cause of action because they were not *mandamus* claims but challenges to the language and constitutionality of the Referendum. Defendants highlighted plaintiff had filed a separate action in her individual capacity that, *inter alia*, challenged the language of the Referendum. In that case, plaintiff requested a preliminary injunction to prevent the Peoria County Election Commission from counting and certifying the ballots of the November 8, 2022, general election, in part, due to the Referendum's language. The court denied plaintiff's request, and this court affirmed. See generally *Alms v. Peoria County Election Comm'n*, 2022 IL App (4th) 220976.

¶ 9 Over defendants' objection, the trial court determined the proposed amendments were "substantially related to the underlying claims that have been previously filed" and "allow[ed] the filing of the first amended complaint." The court noted defendants still had an opportunity to challenge the amended complaint, stating, "[I]f you want to file a motion with

regard to that amended complaint, you can, but I think the amended complaint gets filed and then you can fight it if that's what you choose to do."

¶ 10 Defendants filed no motion challenging the propriety of the first amended complaint or plaintiff's ability to bring counts XII and XIII. Instead, defendants opted to file an answer on December 2, 2022. Their answer "admit[ted] the allegations in paragraph 1." Moreover, in counts XII and XIII, defendants noted they "restate[d] their answers to paragraphs 1 through 77 as if fully set forth herein." Defendants also advanced several affirmative defenses, including, *inter alia*, that plaintiff lacked standing, the "facts alleged *** did not cause any purported harm," and the trial court lacked subject-matter jurisdiction. Defendants did not allege any part of the amended complaint was incorrectly brought in plaintiff's official capacity, as opposed to her individual capacity.

¶ 11 On November 23, 2022, plaintiff filed a motion for a preliminary injunction to prevent defendants from ceasing funding to the office of auditor until the end of her elected term. Following a hearing, the trial court, on November 30, 2022, granted a preliminary injunction. On December 9, 2022, defendants filed an interlocutory appeal of the trial court's order granting a preliminary injunction, arguing, *inter alia*, as the Referendum had passed, plaintiff lacked standing to obtain injunctive relief because she no longer had any right to the office of auditor and therefore faced no injury to any substantive interest. *Thomas*, 2023 IL App (4th) 221075, ¶ 15. This court agreed with defendants, reversed the trial court's order granting a preliminary injunction, and remanded with directions to dissolve the injunction. *Thomas*, 2023 IL App (4th) 221075, ¶¶ 25, 27.

¶ 12 On remand, defendants filed a motion for immediate dissolution of the preliminary injunction on June 2, 2023. While that motion was pending, defendants, on June 15, 2023, filed a

- 5 -

"Motion for Clarification of Order Appointing Special Prosecutor," which sought to ensure taxpayers were "relieved of the burden of having to pay the litigation costs associated with Counts XII and XIII." In that motion, defendants requested the trial court to "clarify via ruling that the order appointing Plaintiff's counsel as special prosecutor did not amount to a ruling entitling Plaintiff to be represented by a taxpayer-funded special prosecutor in her litigation of Counts XII and XIII of the First Amended Complaint." Defendants argued counts XII and XIII were brought by plaintiff in her individual capacity as a private voter, not in her official capacity as auditor and, therefore, allowing plaintiff's appointed counsel to prosecute those individual-capacity counts would constitute an improper expansion of the authority granted to counsel in the appointment order entered by Judge Brown.

¶ 13        A hearing on defendants' motions was held on January 29, 2023. Per the mandate of this court in *Thomas*, the trial court, the Honorable Stewart J. Umholtz presiding, first orally dissolved the preliminary injunction. The court then heard argument regarding the motion to clarify. Defendants argued counts XII and XIII were raised in plaintiff's individual capacity, as she had alleged the Referendum violated "her constitutional right as a voter." Defendants further argued this court's opinion in *Thomas* had "found that the Plaintiff was acting not in her official capacity with regard to those two counts," such that "she had no standing to request injunctive relief." According to defendants, this court "morphed [the cause] into a private cause of action." Defendants argued, therefore, as to counts XII and XIII, "this was not an action where her attorney would be proceeding as a special prosecutor moving forward to date."

¶ 14        In response, plaintiff argued the authority granted to her counsel in Judge Brown's appointment order included the authority to prosecute counts XII and XIII. According to plaintiff, the trial court permitted the amendment of the initial complaint to include those counts, and when

looking to the language of the appointment order, "the appointment is for the case. The case was amended." Plaintiff further noted defendants did not move to "dismiss the cause saying that these new claims are not proper here" but answered the first amended complaint. Moreover, plaintiff argued the counts were brought in her official capacity because she was "an elected official claim[ing] that there's some ambiguity in the implementation of the [R]eferendum."

¶ 15 After recognizing the interpretation of the appointment order would determine the scope of the reasonableness of attorney fees and that, at the time the appointment order was entered, "there [were] no counts 12 and 13," Judge Umholtz granted plaintiff's motion for clarification. The court found the appointment order did not encompass "attorneys fees and costs that are related to [counts XII and XIII]." In making its ruling, the trial court explained, "[B]ased upon the language in the order[,] very clearly [the] order took into consideration the Plaintiff being in her official capacity." Thus, the court was required to interpret the appointment order "strictly and narrowly *** because in the end it's the taxpayer that foots the bill, and there needs to be certainty that any appointment in the [breadth] of that special prosecutor's appointment be based upon specific facts." The court further explained,

"[I]n effect, an order appointing a special prosecutor is an order to pay. It is an order to the taxpayer that you are going to pay for this service. And that needs to be strictly and narrowly construed because the taxpayers—that is the public policy that the Court is most interested in protecting is the taxpayer's expectation and the taxpayer's treatment. And based upon what the Court knows about this proceeding no doubt—I can't speak for taxpayers—but no doubt taxpayers are a bit disappointed with the amount of expenses involved in this matter."

¶ 16 On February 2, 2024, the trial court entered its written order dissolving the

preliminary injunction, granting defendants' motion for clarification of the appointment order, and granting to plaintiff "all fees and costs unrelated to" counts XII and XIII of the first amended complaint.

¶ 17　　　　　This appeal followed.

¶ 18　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 19　　　　　On appeal, plaintiff argues the trial court's order granting defendants' motion for clarification of the appointment order and denying attorney fees to plaintiff relating to counts XII and XIII of her first amended complaint was an abuse of discretion because the appointment order granted counsel the ability to prosecute those counts. Defendants respond the court did not err because counsel's prosecution of counts XII and XIII would amount to an improper expansion of the authority granted to counsel in Judge Brown's appointment order. Accordingly, defendants contend the court properly denied attorney fees to plaintiff relating to those counts.

¶ 20　　　　　We review a trial court's determination regarding whether to award authorized attorney fees for an abuse of discretion. *Donley v. City of Springfield*, 2022 IL App (4th) 210378, ¶ 24. "A trial court abuses its discretion when it acts arbitrarily, without conscientious judgment, or, in view of all of the circumstances, exceeds the bounds of reason and ignores recognized principles of law, resulting in substantial injustice." *In re Marriage of Bradley*, 2011 IL App (4th) 110392, ¶ 26. However, a question pertaining to the court's *authority* to grant attorney fees is a question of law, which we review *de novo*. *Donley*, 2022 IL App (4th) 210378, ¶ 24.

¶ 21　　　　　Plaintiff argues the trial court's denial of attorney fees related to counts XII and XIII was based upon an improper reading of Judge Brown's appointment order. Specifically, plaintiff contends that, contrary to Judge Umholtz's interpretation, the appointment order did not limit her counsel's authority to the prosecution of the counts that existed at the time of the entry

of said order, *i.e.*, counts I through XI, but granted counsel the authority to prosecute "the entire cause." Thus, as counts XII and XIII became part of the case through the filing of her first amended complaint, they were encompassed in the authority granted to her counsel in the appointment order. Accordingly, plaintiff argues, her counsel's prosecution of those counts was not an improper "expansion" of the authority granted in the appointment order.

¶ 22     Our assessment of this argument requires us to interpret section 3-9008 of the Counties Code, which addresses the appointment of a special prosecutor in certain circumstances. When construing a statute, the goal is to ascertain and give effect to the intent of the legislature. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 23. The primary indicator of the legislature's intent is the language of the statute, given its plain and ordinary meaning. *Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 23. "Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 23. Additionally, we may "consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 23. In doing so, however, we will presume the legislature intended no absurd, inconvenient, or unjust results. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 12 (2009). Because the construction of a statute involves a question of law, our review is *de novo*. *Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 22.

¶ 23     Section 3-9008(a-10) of the Counties Code provides:

> "The court on its own motion, or an interested person in a cause, proceeding, or other matter arising under the State's Attorney's duties, civil or criminal, may file a petition alleging that the State's Attorney has an actual conflict of interest in the

cause, proceeding, or other matter. *** If the court finds that the petitioner has proven by sufficient facts and evidence that the State's Attorney has an actual conflict of interest in a specific case, the court may appoint some competent attorney to prosecute or defend the cause, proceeding, or other matter." 55 ILCS 5/3-9008(a-10) (West 2024).

Once such an attorney is appointed, he or she "shall have the same power and authority in relation to the cause or proceeding as the State's Attorney would have if present and attending to the cause or proceedings." 55 ILCS 5/3-9008(a-20) (West 2024). This authority includes the "duty" to "commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for the county, in which the people of the State or county may be concerned" (55 ILCS 5/3-9005(a)(1) (West 2024)) and to "commence and prosecute all actions and proceedings brought by any county officer in the county officer's official capacity" (55 ILCS 5/3-9005(a)(3) (West 2024)). However, section 3-9008(c) provides:

"An order granting authority to a special prosecutor must be construed strictly and narrowly by the court. The power and authority of a special prosecutor shall not be expanded without prior notice to the county. In the case of the proposed expansion of a special prosecutor's power and authority, a county may provide the court with information on the financial impact of an expansion on the county. Prior to the signing of an order requiring a county to pay for attorney's fees or litigation expenses, the county shall be provided with a detailed copy of the invoice describing the fees, and the invoice shall include all activities performed in relation to the case and the amount of time spent on each activity." 55 ILCS 5/3-9008(c) (West 2024).

¶ 24    Defendants argue section 3-9008(a-10) must be construed in light of the "substantial check[ ] against a liberal expansion of special prosecutor powers" contained in section 3-9008(c). Thus, contend defendants, once an appointment as special prosecutor is "secur[ed] *** at the beginning of a case," section 3-9008(c) must be understood to prohibit "a private attorney [from] expand[ing] his powers every time he sought to add new causes of action under Illinois'[s] liberal pleading standards." Defendants assert permitting the unfettered "expansion" of a special prosecutor's authority by adding "new causes" through the amendment of a complaint would render section 3-9008(c) meaningless and, because plaintiff did not adhere to section 3-9008(c)'s procedure to secure the expansion of her counsel's authority, counts XII and XIII necessarily were not encompassed by the appointment order.

¶ 25    Plaintiff, however, asserts her counsel's prosecution of those counts does not run afoul of section 3-9008(c) because no "expansion" of authority occurred. Rather, the "counts at issue fall squarely within the already appointed duties [in the appointment order]—namely, representing the county officer in her official capacity."

¶ 26    Our resolution of the parties' arguments turns on the scope of the authority granted to plaintiff's counsel in the appointment order. Mirroring the language of sections 3-9008(a-10) and 3-9008(a-20), the appointment order granted plaintiff's counsel the authority to prosecute the "cause" or "proceeding." However, the Counties Code does not define the terms "cause" or "proceeding." Accordingly, we assume the legislature intended these terms to have their ordinary and popularly understood meanings. *Landis*, 235 Ill. 2d at 8. "It is appropriate to employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase." *Landis*, 235 Ill. 2d at 8. To that end, Black's Law Dictionary defines "cause" as "[a] lawsuit; a case." Black's Law Dictionary (12th ed. 2024). "Proceeding" is defined as "[t]he regular and orderly progression of a

lawsuit, including all acts and events between the time of commencement and the entry of judgment." Black's Law Dictionary (12th ed. 2024). "Lawsuit," in turn, is defined as "[a] legal case brought before a court or adjudication; [especially], a civil proceeding instituted in court by one or more plaintiffs against one or more defendants." Black's Law Dictionary (12th ed. 2024).

¶ 27 Defendants' argument that plaintiff was required to seek an expansion of her counsel's authority to bring counts XII and XIII implies the power to prosecute the "cause" or "proceeding" as granted in the appointment order extended *only* to the counts set forth in the original complaint, *i.e.*, counts I through XI and no further. Defendants' apparent position is that any matter beyond the claims raised at the outset of the lawsuit or in existence at the time of the appointment order is beyond the scope of the "cause" or "proceeding" to which the appointment order applied. However, given the ordinary meanings of "cause" and "proceeding," that view is too restrictive. Judge Brown's appointment order granted counsel the authority "to prosecute the cause/proceeding on Plaintiff's behalf." As the terms "cause" and "proceeding" refer broadly to the progression of a lawsuit, we do not interpret the amendment of plaintiff's complaint to add additional counts that Judge Mack deemed substantially related to the remaining claims to constitute an "expansion" of a special prosecutor's authority. Thus, applying the plain and ordinary meanings of "cause" and "proceeding," we conclude plaintiff's counsel did not exceed the authority contemplated in sections 3-9008(a-10) and 3-9008(c) and granted in the appointment order.

¶ 28 Defendants nevertheless argue *In re Appointment of Special Prosecutor*, 2012 IL App (2d) 120318-U, and *Bianchi v. McQueen*, 2016 IL App (2d) 150646, compel a different result. Defendants contend these cases establish a plaintiff must file a petition requesting an expansion of prosecutorial authority when, "like here, a case that began as one thing was later desired by the

special prosecutor to morph into another thing." However, these cases provide no support to defendants. We note that *Appointment of Special Prosecutor*, which is cited in both the appellant's and appellees' briefs, is an unpublished appellate court decision from before 2021, which Rule 23 does not permit a litigant to cite for persuasive purposes. See Ill. S. Ct. R. 23(e) (eff. June 3, 2025). The parties' citation to this case, therefore, is improper. We overlook this, however, because as we explain below, *Appointment of Special Prosecutor* is inapplicable in any event.

¶ 29        *Appointment of Special Prosecutor* arose out of allegations of wrongdoing by the McHenry County state's attorney, among others. *Appointment of Special Prosecutor*, 2012 IL App (2d) 120318-U, ¶ 3. *Bianchi*, in turn, arose out of the subsequent malicious prosecution, intentional infliction of emotional distress, and defamation suit filed by the accused individuals against the defendants, an assistant special prosecutor and several investigators, after the accused individuals were acquitted of charges filed by the assistant special prosecutor. *Bianchi*, 2016 IL App (2d) 150646, ¶ 1. Defendants highlight that in both cases, when the special prosecutors learned of additional alleged misconduct that was not authorized for investigation under the trial court's appointment order, they filed a petition to expand the reach of their investigation and prosecutorial authority. *Appointment of Special Prosecutor*, 2012 IL App (2d) 120318-U, ¶ 8; *Bianchi*, 2016 IL App (2d) 150646, ¶¶ 4, 10. As defendants themselves concede, however, "the Illinois Appellate Court was not asked to litigate the propriety of that procedure" in either case but referenced the special prosecutors' request to expand their investigative and prosecutorial authority only in providing the factual background of the case. In actuality, the issue before the court in *Appointment of Special Prosecutor* was whether a request for an expansion of authority was required where the investigative company used by the special prosecutors had complied with discovery requests by producing a significant number of documents without first seeking judicial authorization.

*Appointment of Special Prosecutor*, 2012 IL App (2d) 120318-U, ¶¶ 17, 40-41. Indeed, the court held, "[g]iven the statutory powers given to Special Prosecutors and the practical necessity of using investigators to build a criminal case," the special prosecutors "were *not* required to obtain court permission to hire [the investigative company] for investigation purposes." (Emphasis added.) *Appointment of Special Prosecutor*, 2012 IL App (2d) 120318-U, ¶ 43. Similarly, the issues before the court in *Bianchi* did not concern whether the new investigation was beyond the scope of the appointment order but (1) whether the defendants were entitled to sovereign immunity and (2) whether the plaintiffs pleaded sufficient facts to establish their causes of action. *Bianchi*, 2016 IL App (2d) 150646, ¶¶ 1, 69, 82, 89.

¶ 30        Because neither *Appointment of Special Prosecutor* nor *Bianchi* addressed the circumstances under which a special prosecutor is required to seek an expansion of the authority granted under an appointment order, they are inapposite.

¶ 31        Defendants alternatively argue plaintiff's counsel acted beyond the scope of the appointment order because counts XII and XIII were brought in plaintiff's individual capacity, as opposed to her official capacity as auditor, as the relief requested in those counts related to plaintiff's personal interests. According to defendants, because plaintiff's counsel only had the authority to represent plaintiff in her official capacity, the prosecution of counts XII and XIII was inherently outside the authority of the appointment order. This argument is unavailing.

¶ 32        "A lack of capacity to sue is an affirmative defense on which the defendant bears the burden of proof." *Young America's Foundation v. Doris A. Pistole Revocable Living Trust*, 2013 IL App (2d) 121122, ¶ 41. The defense of a plaintiff's lack of capacity to sue is "subject to waiver unless it was raised at the earliest opportunity at trial." *People ex rel. Illinois State Dental Society v. Vinci*, 35 Ill. App. 3d 474, 477 (1976). Here, following the filing of the first amended

complaint, defendants neither filed a motion nor raised any affirmative defense challenging plaintiff's capacity to sue in her official capacity as auditor. Indeed, although defendants now claim counts XII and XIII advanced plaintiff's personal interests, their answer *admitted* paragraph one of plaintiff's first amended complaint, which stated, "Plaintiff brings this lawsuit in her official capacity as Auditor of the County of Peoria," and defendants incorporated that admission into their answers to the allegations contained in counts XII and XIII. Defendants' first challenge to plaintiff's capacity to bring counts XII and XIII did not materialize until their motion for clarification on June 15, 2023, seven months after the filing of the first amended complaint. Accordingly, we conclude this issue is unpreserved, as defendants have waived it. See *Vinci*, 35 Ill. App. 3d at 477 (concluding, where the defendant did not deny the plaintiff had the capacity to sue in his answer and did not raise the issue until his motion for a new trial, the issue was waived and, therefore, unpreserved); see also *Zimmerman Ford, Inc. v. Cheney*, 132 Ill. App. 2d 871, 874 (1971) (concluding the defendant's claim that plaintiff lacked the capacity to sue was unpreserved where the issue "was neither raised in the motion and affidavit to open the judgment by confession nor in the answer subsequently filed").

¶ 33    We further note that, to the extent defendants contend this court has already "determined that Counts XII and XIII could not have been official-capacity claims" in our opinion in *Thomas*, we reject this argument. In *Thomas*, we held only that plaintiff lacked standing to obtain injunctive relief because, once the office of auditor was eliminated upon certification of the Referendum result, she could not establish she faced an injury to any clearly ascertainable interest. *Thomas*, 2023 IL App (4th) 221075, ¶ 25. In *Thomas*, we did not consider or make any pronouncements about the propriety of plaintiff bringing her claims in her capacity as an elected

official, as opposed to in her individual capacity, nor did we purport to convert plaintiff's official-capacity claims into individual-capacity claims.

¶ 34      In sum, based upon (1) the plain and ordinary meanings of "cause" and "proceeding" as used in section 3-9008(a-10) and 3-9008(a-20) of the Counties Code and (2) the appointment order's broad and unconditional grant of authority to plaintiff's counsel to prosecute the "cause/proceeding" on behalf of plaintiff in her official capacity as auditor, we conclude counsel's prosecution of counts XII and XIII was within the scope of the authority granted to counsel in the appointment order. Accordingly, no request for an expansion of counsel's authority was necessary.

¶ 35      Having determined the scope of the appointment order, we now turn to whether the trial court abused its discretion in granting defendants' motion for clarification and denying attorney fees to plaintiff related to counts XII and XIII on the basis her counsel did not have the authority to prosecute those counts. The court's conclusions were premised upon its (1) determination plaintiff's counsel's prosecution of those counts XII and XIII was beyond the scope of the authority granted in the appointment order and (2) desire to "protect[ ] the taxpayer's expectation and the taxpayer's treatment" because, "in effect, an order appointing a special prosecutor is an order to pay" and "in the end it's the taxpayer that foots the bill."

¶ 36      As to the first ground the trial court relied upon, we have already established counsel's prosecution of counts XII and XIII *was* encompassed in the powers granted in the appointment order because Judge Brown broadly granted counsel the ability to prosecute the "cause/proceeding" without qualification, mirroring the language of section 3-9008(a-10) and 3-9008(a-20). When considering the plain meanings of "cause" and "proceeding," it is evident Judge Brown granted counsel the authority to prosecute all events occurring in the orderly progression

of the lawsuit, which would therefore include additional counts injected into the suit by amendment and raised in plaintiff's official capacity. The court's determination otherwise constituted either an erroneous interpretation of section 3-9008(a-10) and 3-9008(a-20) or a failure to adhere to Judge Brown's prior order. We conclude under either circumstance, the court's conclusion was erroneous. This is because "it is always an abuse of discretion to base a decision on an incorrect view of the law." *Thompson v. Gordon*, 356 Ill. App. 3d 447, 461 (2005). Beyond that, "[p]rior judicial determinations are the best evidence of what is expected of the parties." *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 23. As a result, "prior interlocutory rulings should be modified or vacated by a successor judge only after careful consideration." *Balciunas v. Duff*, 94 Ill. 2d 176, 187 (1983). Where a previous order involved the exercise of a prior judge's discretion, "the successor judge may overturn the order only where new facts or circumstance[s] warrant such action and there is no evidence of 'judge shopping.' " *Bailey v. Allstate Development Corp.*, 316 Ill. App. 3d 949, 956-57 (2000) (quoting *Lake County Riverboat L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 950 (2000)). Additionally, a successor judge may correct a previous order when a "successor judge finds that the previous interlocutory order is erroneous as a matter of law." *Bailey*, 316 Ill. App. 3d at 957. Here, however, defendants advance no new facts or circumstances that warranted the trial court's limitation of the broad authority granted under the appointment order. Further, the record does not establish the court limited the appointment order because it believed it was legally erroneous, nor could it do so on that basis, because the appointment order tracked the language of section 3-9008(a-10) and 3-9008(a-20).

¶ 37 Given the foregoing, the sole remaining ground for the trial court's grant of the motion for clarification and denial of attorney fees related to those counts was its desire to lessen the financial burden on Peoria County taxpayers. In making its ruling, the court stated it viewed

"an order appointing a special prosecutor [as] an order to pay" because "in the end it's the taxpayer that foots the bill." Accordingly, the court opined the public policy it was "most interested in" was protecting taxpayers, whom the court understood to be "disappointed with the amount of expenses involved in this matter." However, to the extent the court narrowly interpreted the appointment order solely as a means of lessening the financial burden on Peoria County taxpayers, the propriety of that rationale is suspect. See *Armentrout v. Dondanville*, 67 Ill. App. 3d 1021, 1030 (1979) ("We do not agree with the reasoning of the trial court that such an appointment [of a special state's attorney to represent a party] be denied for the sole reason that the county has to pay the cost for both sides of the appeal."). Absent additional facts or new circumstances warranting the limitation of the authority granted to plaintiff's counsel in Judge Brown's appointment order, we conclude the court abused its discretion in limiting the scope of that appointment order and denying plaintiff attorney fees related to counts XII and XIII. See *In re Marriage of Watson*, 2022 IL App (2d) 210137, ¶ 38 (stating where the predecessor judge gave party leave to file a new maintenance petition, the successor judge "abused his discretion by *** failing to adhere to that prior order").

¶ 38      We acknowledge courts must interpret orders appointing a special prosecutor strictly and narrowly. 55 ILCS 5/3-9008(c) (West 2024). However, given the broad authority provided to plaintiff's counsel without qualification in the appointment order to prosecute these proceedings, even a narrow reading of the appointment order would encompass counsel's representation on counts XII and XIII. Accordingly, we hold the trial court abused its discretion in granting defendants' motion for clarification and denying attorney fees to plaintiff relating to counts XII and XIII on the basis plaintiff's counsel lacked the authority to prosecute those counts. As such, we reverse that portion of the court's order and remand with directions to enter an appropriate fee award relating to counts XII and XIII.

¶ 39                              III. CONCLUSION

¶ 40          For the reasons stated, we reverse the trial court's grant of defendants' motion for

clarification and denial of attorney fees to plaintiff relating to counts XII and XIII and remand with

directions that the court enter an appropriate fee award relating to the prosecution of counts XII

and XIII. We otherwise affirm the court's judgment.

¶ 41          Affirmed in part and reversed in part; cause remanded with directions.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 21-MR-992; the Hon. Stewart James Umholtz, Judge, presiding. |
| **Attorneys for Appellant:** | Justin M. Penn and Katelin N. Scolaro, of Hinshaw & Culbertson LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Thomas J. Sotos, James Sotos, and Lisa M. Meador, of Sotos Law Firm, P.C., of Chicago, for appellees. |